(581 P.2d 817)

No. 49,099

IN THE MATTER OF THE UNIT DETERMINATION BY THE PUBLIC EM-
PLOYEE RELATIONS BOARD OF THE STATE OF KANSAS FOR CERTAIN
EMPLOYEES OF THE UNIVERSITY OF KANSAS FACULTY: COGGINS, *et
al., Appellees and Cross-Appellants,* v. PUBLIC EMPLOYEE RE-
LATIONS BOARD OF THE STATE OF KANSAS, *Appellant and Cross-
Appellee.*

Petition for review denied September 13, 1978.

Opinion filed June 30, 1978.

*Donald E. Jensen,* assistant attorney general, and *Curt T. Schneider,* attorney general, for the appellant and cross-appellee.

*John W. Lungstrum* of Stevens, Brand, Lungstrum & Golden, of Lawrence, for the appellees and cross-appellants.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SPENCER, J.: This is an appeal from an order of the district court setting aside that portion of an order of the Public Employee Relations Board which included the faculty of the University of Kansas School of Law within a bargaining unit composed of all university faculty on the Lawrence campus.

On March 20, 1975, five university faculty members petitioned the board for bargaining unit determination pursuant to K.S.A. 75-4327(c). The petition proposed one unit composed of all faculty on the Lawrence campus. Thereafter, the faculties of the Law School and of the Engineering School petitioned for separate units.

A hearing on the consolidated petitions was held from June 30 to July 2, 1975, before a hearing officer appointed by the board. The Law School and Engineering School petitions were opposed by the university administration. Evidence was presented by both sides and the hearing officer took the matter under advisement.

On October 16, 1975, the hearing officer submitted his findings of fact, conclusions of law, and recommendations to the board. In twenty-two detailed findings, the hearing officer adopted the evidence of the law faculty and recommended a separate unit. Among other points, the findings noted several administrative areas where the Law School operates differently from the rest of the university, *e.g.,* enrollment, class, and examination scheduling. There were also findings that the law faculty differs from other faculty in that starting salaries and rank are higher, a shorter time is needed for tenure, and teaching loads are lighter but classes larger. In findings dealing with similar factors, the hearing officer found no significant differences between the engi-

neering faculty and the rest of the university faculty, and recommended that they be included within the campus-wide unit. The parties were not served with copies of that report.

The matter was passed to the board meeting scheduled for November 20, 1975, at 1:00 p.m. At approximately 10:00 a.m. that morning, three of the board members met with the board's executive director and the hearing officer in the board's offices. The unit determination case was discussed for thirty to forty-five minutes. At the scheduled meeting that afternoon, the board, with only the three members who had been in attendance at the morning gathering, adopted without further discussion a motion that the law faculty be included within the campus-wide unit. The hearing officer was directed to prepare revised findings of fact and conclusions of law, which were subsequently approved by the board.

The new findings noted similarities and interconnections between the Law School and its faculty and the rest of the university, which included: hiring procedures; fringe benefits; titles for law faculty are the same as for other faculty; university grievance procedures are available to law faculty; university procedures apply to discipline and dismissal and are the same for all faculty; and law faculty members have maintained at least proportionate membership on university governance committees. The hearing officer's findings as to the engineering faculty were adopted in their entirety by the board.

The law faculty thereafter sought review in the district court pursuant to K.S.A. 75-4334(b). The court rejected the law faculty's procedural claims, holding that the board could properly function through three of its five members; the parties need not be served with copies of the hearing officer's report or be allowed to argue before the board; and the morning meeting of November 20, 1975, although a technical violation of the open meeting law, did not require the matter to be returned to the board. The court nonetheless set aside the order of the board, noting that its findings, although supported by the evidence, did not support its conclusions. This was because the findings were "meager" when compared to the law faculty's "extensive and uncontradicted" evidence; the board did not explain its disregard of this evidence; and the board's findings as to the law and engineering faculty petitions were inconsistent.

The board has appealed, contending that the district court exceeded the scope of judicial review and substituted its judgment for that of the board. The law faculty has cross-appealed, contending that the findings of the board are not supported by the evidence and that the procedural arguments rejected by the district court independently require that the board's order be set aside.

The rules on review of an order of the Public Employee Relations Board were said in *Kansas Ass'n of Public Employees v. Public Service Employees Union,* 218 Kan. 509, 511, 544 P.2d 1389 (1976), to be those established in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968), as the standard rules on review of administrative orders.

" 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.'

. . .

" 'In reviewing a district court's judgment [the appellate court] will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court.' " (218 Kan. at 511.)

Applying such rules to this case, we conclude that the district court did exceed the scope of judicial review. The court found the board's "conclusion" to be arbitrary and not reasonably supported because the board's findings were "meager" in comparison to the "extensive" evidence of the law faculty. In *Kansas Ass'n of Public Employees,* supra, the court considered K.S.A. 75-4334(b) which makes the board's findings "conclusive" unless not supported "by substantial evidence and the record considered as a whole." The court there said that this requires a reviewing court to search the record for substantial evidence to support the board's findings, but does not authorize it to weigh the evidence. So here, when the district court determined that the board's findings, with one exception, were supported by the evidence, its review of that evidence should have come to an end. By classifying the evidence as "meager" on the one hand and "extensive" on the other, the court exceeded its authority by weighing the evidence and substituting its judgment for that of the board.

Our own review of the evidence, moreover, reveals that rea-

sonable minds might differ as to the conclusion to be drawn. As stated in *Kansas Ass'n of Public Employees,* supra, " '[t]he facts that are to be considered and the relative weight to be given them in making a determination are matters left to the [board's] discretion.' " (218 Kan. at 512.) Although this court might have decided the question differently, and might believe the weight of the evidence to be contrary to the decision of the board, this court may not substitute its judgment for that of the board.

The district court also found that the board was arbitrary in failing to explain its disregard of the law faculty's "uncontradicted" evidence and in applying inconsistent considerations to the law and engineering faculty petitions. We do not agree. The rule that uncontradicted evidence is not to be disregarded and is ordinarily regarded as conclusive (*Berry v. Wondra,* 173 Kan. 273, 246 P.2d 282 [1952]; *Anderson v. Kinsley Sand & Gravel, Inc.,* 221 Kan. 191, 558 P.2d 146 [1976]) has no application here. Although the law faculty's evidence was "uncontradicted" in its particulars, it was neither conclusive nor uncontradicted on the issue of an appropriate bargaining unit. The board was not required to explain why it did not adopt the law faculty's evidence. All that is required is that it express the basic facts on which it relies with sufficient specificity to convey to the parties, and the reviewing courts, the facts and standards which govern its determination. See *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, Syl. 4, 433 P.2d 572 (1967).

The findings of the board on the law and engineering petitions were somewhat inconsistent in the factors emphasized in denying a separate unit. It appears that the board simply adopted the hearing officer's findings on the engineering petition while making different findings on the law petition. Despite this seeming inconsistency, arbitrariness has not been shown. As long as its findings are supported by evidence and in turn support the conclusion, an administrative tribunal is free to emphasize different approaches in individual cases. In a similar vein, it has been said that the doctrines of *res judicata* and *stare decisis* are not generally applicable to administrative determinations. *Warburton v. Warkentin,* 185 Kan. 468, 345 P.2d 992 (1959). Administrative decisions of less than ideal clarity will be upheld where the path of decision is reasonably discernible. Although there may be instances where inconsistency within or between deci-

sions will render an administrative decision arbitrary, this is not such a case.

Finally, the law faculty argues that the board's decision was arbitrary as contrary to precedent. They point to opinions of the National Labor Relations Board which have granted a separate unit to law faculty in cases under NLRB jurisdiction. We note K.S.A. 75-4321(a)(4) and (5) indicating the "inherent differences" between public and private employment. In addition, K.S.A. 75-4327(c) and K.A.R. 84-2-6 indicating the considerations for determining appropriate units differ in large measure from the considerations of Section 9 of the Labor-Management Relations Act (29 U.S.C. § 159).

Having concluded that the district court erred in holding the board's order to be substantively arbitrary and capricious, we turn to the law faculty's cross-appeal.

We find no merit in the point that the findings of the board are not supported by the evidence. The argument is not that the findings lack a foundation in the evidence, but that some of them are "misleading" in light of the law faculty's evidence. This argument is insufficient to defeat the findings of the board. Interpretation of evidence is within the discretion of the board.

Neither is there merit in the argument that failure of two of the board's five members to participate in the decision renders it procedurally defective. It is true that K.S.A. 75-4323(a) requires one member of the board to be representative of public employers, one to be representative of public employees, and three to be representative of the public at large. The statute does not, however, require unanimous action or participation. K.S.A. 77-201 *Fourth* provides:

"Words giving a joint authority to three or more public officers or other persons shall be construed as given (*sic*) such authority to a majority of them, unless it be otherwise expressed in the act giving the authority."

We conclude that three of the five members may lawfully conduct the business of the board.

However, we agree with the law faculty that there are other procedural defects in the board's decision which require that it be vacated and returned to the board for reconsideration.

Where, as here, an administrative body acts in a quasi-judicial capacity, constitutional requirements of due process are applicable to proceedings had before it. *Adams v. Marshall,* 212 Kan.

595, Syl. 2, 512 P.2d 365 (1973). There is no claim that the procedure before the hearing officer was in any way defective. Nor is there a claim that the board could not decide the case without being present when the evidence was presented. Due process is not violated by such procedure provided the deciding authority considers and acts on the evidence received. *Cf., Clairborne v. Coffeyville Memorial Hospital,* 212 Kan. 315, 318, 510 P.2d 1200 (1973). In apprising itself of the evidence, the deciding authority is not precluded from obtaining the aid of competent assistants who may sift and analyze the evidence. *Morgan v. United States,* 298 U.S. 468, 481, 80 L.Ed. 1288, 56 S.Ct. 906 (1936). Such a task is performed by the hearing officer under the board's procedures. K.S.A. 75-4323(d)(2), K.A.R. 84-2-2(*c*)(7).

Because an administrative decision must be based on evidence and not conjecture, on those occasions when the deciding authority chooses not to adopt the findings and recommendations of its hearing officer, it must examine the record independently. See *Cooper v. State Board of Medical Examiners,* 35 Cal. 2d 242, 217 P.2d 630 (1950). In the absence of evidence to the contrary, it will be presumed that the deciding officials have so considered the record. Anno., 18 A.L.R.2d 606, § 10, p. 625 (1951). Here, however, it appears that the three board members who considered the matter were not conversant with the record to the extent required of an informed decision. All three indicated in answers to interrogatories that they had read only "portions" of the transcripts, and only one had read "some" of the exhibits. The duty of the deciding officer to consider and appraise the evidence may on occasion be an onerous one, but its performance in a substantial manner is inseparable from the exercise of the authority conferred. *Morgan v. United States,* supra, p. 482.

In addition, the parties were not served with copies of the hearing officer's report. If the deciding authority makes its decision based on a hearing officer's report, due process requires that the parties be served with copies and be allowed to take exceptions thereto. 2 Am. Jur. 2d, *Administrative Law* § 431, pp. 240-241. In this case, as just indicated, the board did not adopt the hearing officer's report. We conclude, however, that the better practice is to serve the parties with copies of the report on all occasions. K.A.R. 84-2-1(*d*) requires the board to serve the parties with "all papers duly filed with the board." Had this been done in

this case, the law faculty could have filed briefs with the board in support of the hearing officer's recommendations. We note that the law faculty did file briefs with the board and could have argued had they wished, but they had no knowledge of the hearing officer's original report nor of the revised findings prior to adoption by the board.

We also conclude that the unannounced morning gathering prior to the scheduled meeting of November 20, 1975, constituted a violation of the open meeting law, in effect at that time, K.S.A. 1975 Supp. 75-4317, *et seq.* K.S.A. 1975 Supp. 75-4318(*a*) provided:

"Except as otherwise provided by law, all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof, receiving or expending and supported in whole or in part by public funds shall be open to the public and no binding action by such bodies shall be by secret ballot."

The act did not then define "meetings." From the declaration of purpose of the act (K.S.A. 1975 Supp. 75-4317), we conclude that that term includes all gatherings at all stages of the decision-making process. See Harper, "The Kansas Open Meetings Act of 1972," 43 J.B.A.K. 257, 296 (1974); Tacha, "The Kansas Open Meeting Act: Sunshine on the Sunflower State?" 25 Kan. L. Rev. 169, 177-181 (1977). In 1977, the legislature amended the act to provide:

"As used in this act, 'meeting' means any prearranged gathering or assembly by a majority of a quorum of the membership of a body or agency subject to this fact (*sic*) for the purpose of discussing the business or affairs of the body or agency." K.S.A. 75-4317a.

This definition comports with our interpretation as applied to the act prior to the 1977 amendments. As long as such a meeting is for the "conduct of the affairs of, and the transaction of business by" a body subject to the act, the meeting must be open.

The board members indicated that, although the morning gathering was informal, its purpose was to question the hearing officer, consider legislative intent, and discuss how such matters had been handled in other states. We conclude that the gathering that morning was within the ambit of the act and a technical violation occurred. We note also that the 1977 amendments added the following limitation to the open meeting requirement:

". . . [A]ny administrative body that is authorized by law to exercise quasi-judicial functions shall not be required to have open meetings when such body is deliberating matters relating to a decision involving such quasi-judicial functions." K.S.A. 75-4318(a).

The provisions relating to "deliberating" sessions cannot be said to apply to the meeting here, which was held to gather information for the board's understanding of the matter, and in any event were not applicable at the time.

No penalties, other than criminal penalties for willful violations, were prescribed for violations of the act as effective in 1975 (K.S.A. 1975 Supp. 75-4320). This has since been modified to a civil penalty by the 1977 amendments (K.S.A. 75-4320). While the technical violation here involved, standing alone, might not require that the matter be returned to the board (*Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, 562, 539 P.2d 1 [1975]), we conclude that, when combined with the failure of the board members to fully acquaint themselves with the record under the facts of this case and the failure of the board to serve the parties with a copy of the hearing officer's report, the matter must be so returned.

The judgment is reversed on appeal, affirmed in part and reversed in part on cross-appeal. This case is remanded to the district court with directions to further remand to the Public Employee Relations Board for reconsideration in conformity herewith.