# Richmond

## ROANOKE CITY SCHOOL BOARD, A Body Corporate

v.

## TIMES-WORLD CORPORATION, A Virginia Corporation and John J. Chamberlain

September 9, 1983.

Record No. 810769.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ., and Harrison, Retired Justice.

*William X. Parsons, Assistant City Attorney (Wilburn C. Dibling, Jr., City Attorney*, on brief), for appellant.
*Daniel S. Brown (Dianne E. H. Wilcox; Hazlegrove, Dickinson, Rea, Smeltzer & Brown*, on brief), for appellees.

HARRISON, R.J., delivered the opinion of the Court.

The issue in this case is whether a prearranged telephone conference call in which all members of a school board participated and discussed matters proper for an executive or closed session

constituted a "meeting" within the purview of "The Virginia Freedom of Information Act," Code §§ 2.1-340 to -346.1. In a proceeding brought by Times-World Corporation and John J. Chamberlain against the Roanoke City School Board pursuant to Code § 2.1-346, which provides for the enforcement of rights and privileges conferred upon the public by the Act, the trial court held that the conference call constituted a "meeting" and was in violation of the Act. This appeal by the School Board ensued.

Times-World Corporation is publisher of *The Roanoke Times & World-News*, and John J. Chamberlain is education writer for those newspapers. Roanoke City School Board, a public body corporate, is subject to the provisions of The Virginia Freedom of Information Act, and all meetings of the Board must comply with requirements of the Act. During the month of February 1981, the Board was in the final stages of selecting a new Superintendent of Schools. On February 9, 1981, the Chairman of the Board made a telephonic inquiry of the State Board of Education as to the eligibility of an applicant for the position to be placed on the Virginia Eligibility List for Superintendents. Upon being advised as to the status of the applicant, the Chairman wanted to relay this information to the other Board members. He thereupon inquired of an Assistant City Attorney as to whether a telephone conference call would constitute a violation of The Virginia Freedom of Information Act, and was advised that, in the attorney's opinion, such a conference call would not constitute a "meeting" within the meaning of the Act.

The call was arranged. No notice of it was given to the public or members of the media. No public or open meeting was held prior to the call, no vote of the School Board to hold an executive or closed session was taken or recorded, and no minutes were taken. All seven members of the School Board participated from his or her own place of residence or business. During the telephone conversation, which lasted approximately thirty minutes, the Chairman gave the Board members the information he had received from the State Board relative to the eligibility of the applicant to be placed on the Virginia Eligibility List. Other matters proper for an executive or closed session, all related to the selection of a new superintendent, were discussed. No action or votes were taken during the call.

The parties agree that had the Chairman of the School Board been called as a witness, he would have testified that it was not his

intent in arranging the telephone conference call to avoid the provisions of The Freedom of Information Act, but that he simply desired to expedite what otherwise would have been a time-consuming process.

Appellees contend that the conference call constituted a "meeting" under the provisions of the The Virginia Freedom of Information Act. While admitting the subject of the call was proper for an executive or closed session, they argue the call constituted a violation of the Act because no vote to conduct an executive or closed session was taken in open meeting, stating specifically the purpose or purposes of the session or making specific reference to the applicable provision of the Act allowing such a session, as required by Code § 2.1-344(b). The School Board responds that the provisions of the Act providing for executive or closed meetings do not apply to a telephone conference call.

This appeal requires a construction of the term "meeting" as the word is used in the Act. To do so "we first turn our attention to the purpose to be served by the statute in question, the evil sought to be corrected by the legislature." *Southern Railway* v. *Commonwealth*, 205 Va. 114, 117, 135 S.E.2d 160, 164 (1964).

Code § 2.1-340.1 states the policy of the Act and the rule of construction to be applied. The section reads as follows:

It is the purpose of the General Assembly by providing this chapter to ensure to the people of this Commonwealth ready access to records in the custody of public officials and free entry to meetings of public bodies wherein the business of the people is being conducted. This chapter recognizes that the affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government. To the end that the purposes of this chapter may be realized, it shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.

Code § 2.1-341(a) defines the word "meeting" or "meetings" for the purpose of the Act. It provides as follows:

> *"Meeting"* or *"meetings"* mean the meetings, when sitting as a body or entity, or as an informal assemblage of (i) as many as three members, or (ii) a quorum, if less than three, of the constituent membership, wherever held, with or without minutes being taken, whether or not votes are cast, of any legislative body, authority, board, bureau, commission, district or agency of the Commonwealth or of any political subdivision of the Commonwealth, including cities, towns and counties; municipal councils, governing bodies of counties, school boards and planning commissions; boards of visitors of State institutions of higher education; and other organizations, corporations or agencies in the Commonwealth, supported wholly or principally by public funds. The notice provisions of this chapter shall not apply to the said informal meetings or gatherings of the members of the General Assembly. Nothing in this chapter shall be construed to make unlawful the gathering or attendance of two or more members of a body or entity at any place or function where no part of the purpose of such gathering or attendance is the discussion or transaction of any public business, and such gathering or attendance was not called or prearranged with any purpose of discussing or transacting any business of the body or entity.

Executive or closed meetings for certain purposes, including a discussion of the employment involved in this case, are permitted. Code § 2.1-344. However, Code § 2.1-344(b) provides that there be no executive or closed meeting

> unless there shall have been recorded in open meeting an affirmative vote to that effect by the public body holding such meeting, which motion shall state specifically the purpose or purposes . . . which are to be the subject of such meeting and a statement included in the minutes of such meeting which shall make specific reference to the applicable exemption or exemptions. . . .

Appellees argue that the statutory scheme of the Act is clear, that activities of public bodies are public business, and such bodies must meet publicly except under certain restricted conditions and, even in the case of exceptions, the public is entitled to know that the body is meeting in private and the specific subject matter of the private session. They further contend that in construing the Act, the guiding principle to be followed by this Court must be "to maximize the information made available to the public." They say that a telephone conference call is in fact a "meeting" and that here the procedural requirements for an executive session were not met and, as a result, the news media and the public did not know of the Board's discussion or its subject matter. Appellees cite decisions from other states wherein the word "meeting," as used in various freedom of information laws, is given a broad interpretation. Their citations include *Sacramento Newspaper Guild* v. *Sacramento County Board of Supervisors*, 263 Cal. App.2d 41, 48, 51, 69 Cal. Rptr. 480, 485, 487 (3d Dist. 1968), where it was held that "meeting" includes deliberative gatherings however confined to investigation and discussion; *State ex rel. Lynch* v. *Conta*, 71 Wis.2d 662, 682, 239 N.W.2d 313, 329 (1976), where it was held that sessions where members compose a legally competent governmental body are "meetings"; and *Coggins* v. *Public Employee Relations Board*, 2 Kan. App.2d 416, 581 P.2d 817 (1978), where it was held that "meeting" includes all gatherings at all stages of the decision-making process.

■ We are well aware of the salutary purposes of freedom of information laws, of the statutory requirement that such laws be liberally construed to promote their purposes, and that any exceptions from applicability be narrowly construed. However, there is no common-law right of the public or press to attend the meetings of governmental bodies. Therefore, in the absence of a statutory prohibition, there can be no legal or constitutional objection to a governmental body transacting certain business by means of a telephone conference call. If such a call is prohibited, the prohibition must be found in legislative enactment. It cannot be done by judicial fiat.

■ The Virginia Freedom of Information Act contains a very specific definition of the words "meeting" or "meetings" which the Act was designed to cover. A "meeting" under the statute is deemed to occur when a governmental body is *"sitting* as a body or entity, or as an informal *assemblage."* Code § 2.1-341(a) (em-

phasis added). Nowhere in the Act is any reference made to a telephone call or conversation. The commonly accepted meaning of the word "meeting" is that found in *Black's Law Dictionary* 886 (5th ed. 1979). There, "meeting" is defined as "[a] coming together of persons; an assembly. Particularly, in law, an assembling of a number of persons for the purpose of discussing and acting upon some matter or matters in which they have a common interest." *Webster's Third New International Dictionary* 1404 (1971) defines "meet" as follows: "[T]o come together usually from different directions: come face to face . . . to hold a session: convene for worship, business, or other purpose." "Meeting" is defined there as "an act or process of coming together . . . a gathering for business, social, or other purposes."

Irrespective of one's preferred definition, whether it be coming together, assembling, gathering, or meeting, the *physical* presence of the participants is essential. A telephone conference call does not qualify. A participant in a telephone call can communicate with others, listen to them, speak and be heard, but none of this is done in the physical presence of individuals who have come together, met, assembled, and are "sitting" as a body or entity.

The appellees argue that if a telephone conference call is not prohibited by the Act, then the Act contains a "glaring loophole." This may be, but, if true, it is a loophole that must be closed and corrected by the General Assembly, not by the courts. We are not dealing here with the denial of a constitutional right but with a statute whose subject matter is one within the discretion of the legislature.

Further, we are not persuaded that the omission in the Act of any reference to a telephone conference call was inadvertent. Such calls have been in common use for many years. The General Assembly has expressly approved meetings of corporate boards of directors by conference calls. Code § 13.1-41. Appellees call attention to the practice of this Court which now, at the request of counsel for a petitioner, will hear his or her petition for appeal by telephone conference call. However, such a hearing is not regarded by the Court as a meeting. We do not see or meet with the lawyer presenting the petition. We hear argument over the telephone and grant or reject the petition based upon the record, the briefs, and the telephonic presentation. This procedure is in effect a substitute for a personal presentation at which time members of

the Court, the attorneys, and other interested parties are present and assembled in "meeting."

The School Board's argument that affirmation here could possibly frustrate the routine, day-to-day operation of some public bodies has merit. The Act pertains to meetings of as many as three members, or a quorum if less than three, of the constituent membership of a public body. Code § 2.1-341(a). It is a matter of common knowledge that throughout the Commonwealth there are numerous public councils, boards, committees, commissions, and agencies which are composed of two or three members. Two of the members of such an entity constitute a quorum, and therefore any telephonic communication between the two pertaining to the business of the body or entity would be impermissible under the trial court's ruling.

These and other possible complications may have prompted the General Assembly to omit any reference in the Act to telephone conference calls. The requirement for the taking of minutes, and of advance notice to the public of the proposed telephone call, the difficulty of determining for the purpose of notice where the meeting is to occur, *i.e.*, which member's address is to be deemed the meeting place, and other involvements, could well frustrate or prevent the making of telephone conference calls. If a public body be required to assemble and meet in person prior to making a telephone conference call, the necessity for the call would be obviated.

It is conceded that the subject which was discussed by the members of the Roanoke City School Board at the prearranged telephone conference call was a proper one for an executive or closed session of the Board. Had there been full compliance with the provisions of the Act, neither the news media nor any member of the public would have been privy to the information which the Chairman desired to disseminate to the members.

We conclude that in its enactment of the Freedom of Information Act, it was not the intent of the General Assembly of Virginia that a telephone conference call between members of a public body be construed as a "meeting" of the members. If the legislature decides that such calls should be within the ambit of the Act, it will be a simple matter for the statute to be amended.

The decree of the court below will be reversed, and appellees' petition for relief dismissed.

*Reversed and final judgment.*

POFF, J., dissenting.

I cannot join in a decision which I find wholly inconsistent with public policy declared by the General Assembly.

Virginia's Freedom of Information Act is best described as a "right-to-know law". The evil it seeks to cure is secrecy in government. In its statement of policy, the Act "recognizes that the affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government." Code § 2.1-340.1. All public business not expressly exempt by the Act must be conducted in public. Although "[d]iscussion or consideration" of certain types of business may be conducted in "[e]xecutive or closed meetings", Code § 2.1-344(a), no such meeting can be held without prior notice to the people, publicized in open meeting by adoption of a motion stating the specific subject or subjects authorized by the Act to be considered in secret, Code § 2.1-344(b). No action taken in a private meeting can become effective unless later ratified in a meeting open to the public. Code § 2.1-344(c).

Manifestly, the legislative purpose of the Act was to promote the right of the people to know what government officials, elected and appointed, plan to discuss and consider in private as well as what they do in public in the discharge of the fiduciary duties entrusted to them. The right to know, of course, is essential to the right of the people to call their servants to account at the polls or in the courts.

Courts should construe statutes enacted to promote the rights of the people in the light most favorable to the people. The Virginia Act codifies that rule of construction. "To the end that the purposes of this chapter may be realized, it shall be liberally construed to promote an increased awareness by all persons of governmental activities . . . [and] [a]ny exception or exemption from applicability shall be narrowly construed . . . ." Code § 2.1-340.1.

The majority stands this rule on its head. Construing the word "meeting" to mean a physical "sitting" at a common situs, the majority broadens rather than narrows the statutory exceptions

and exemptions and impedes rather than promotes public "awareness . . . of governmental activities". Hereafter, under the majority's decision, any public body so inclined can discuss and consider all its public business, whether covered or exempt by the Act, by teleconference and without prior notice to the public.[1] Such practice is patently inconsistent with the stated purpose of the Act.

It is true, as the majority says, that "[n]owhere in the Act is any reference made to a telephone call or conversation." But that does not prove that the legislature intended to exempt meetings held in such manner from the provisions of the Act. Indeed, a published report of a study authorized by the House of Delegates indicates otherwise. A subcommittee, appointed in 1982 pursuant to House Resolution 11, reported that "all participants agreed that the Act should not be weakened by exempting conference calls from the provisions of the Act." It was the view of the members that "any meeting held through teleconferencing by a public body in which the business of the citizens of the Commonwealth is discussed or conducted is subject to the Virginia Freedom of Information Act and should be conducted in a manner which would not violate that Act or any other provision of law."[2]

I subscribe to that view, and I reject the contrary view adopted by the majority. Guided by the public policy the Act seeks to promote, I would define "meeting" as any gathering, whether in person or by telecommunications, of the members of any public body covered by the Act when that gathering is convened to discuss or transact public business. Under that definition, any meeting conducted by telecommunications, although called to consider subjects exempt under Code § 2.1-344(a), would be unlawful unless convened in compliance with the provisions of Code § 2.1-344(b).

---

[1] Seeking to reinforce its rationale, the majority embraces the School Board's argument that the trial court's construction would lead to absurd results in other cases. Since two members of a three-member public body constitute a quorum, the majority fears that "any telephonic communication between the two pertaining to the business of the body or entity would be impermissible under the trial court's ruling." Would not the same be true if the two held a pre-arranged conversation while "sitting" at a lunch counter?

[2] The subcommittee, noting the pendency of the appeal in this case, recommended "that no amendments be made at this time." Arguably, the subcommittee concluded that no legislation would be necessary unless this Court disagreed with the views expressed in its report.

This definition comports with the construction applied by the chancellor, and I would affirm his decree.

STEPHENSON and THOMAS, JJ., join in dissent.