No. 68,695

STATE OF KANSAS *ex rel.* ROBERT T. STEPHAN, Attorney General, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF SEWARD COUNTY, KANSAS, JOE E. SEALEY, CECIL J. WETTSTEIN, and OTTO J. MEHL, *Appellees.*

(866 P.2d 1024)

Opinion filed January 21, 1994.

*Mark W. Stafford*, assistant attorney general, argued the cause, and *Robert T. Stephan*, attorney general, and *Mark S. Braun*, assistant attorney general, were on the brief for appellant.

*J. Douglas Miller*, county counselor, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

MCFARLAND, J.: This is an action brought on the relation of the Attorney General against the defendant Board of County Commissioners of Seward County, Kansas, (Board) and the three individual commissioners, alleging violation of the Kansas Open Meetings Act (KOMA), K.S.A. 75-4317 *et seq.* The district court entered summary judgment in favor of the defendants on the grounds that the complained-of telephone calls were not within the purview of KOMA's proscribed conduct. The State appeals therefrom.

Commissioner Wettstein resides in Kismet. The other two commissioners reside in Liberal. The petition alleges that between December 20, 1988, and January 2, 1990, Commissioner Wettstein made 18 telephone calls to Commissioner Sealey and four telephone calls to Commissioner Mehl. The petition further alleges that in the same time period Commissioner Sealey made

three telephone calls to Commissioner Wettstein. Each of the calls was paid for with county funds. The State contends that as county business was discussed during each telephone call, and two members constitute a quorum of a three-member board, such telephone calls constitute a violation of KOMA.

The district court held: (1) Telephone calls are not proscribed conduct under KOMA; (2) even if such telephone calls were within the scope of KOMA, they were not "prearranged" meetings under KOMA; and (3) the defendants were, accordingly, entitled to summary judgment.

Appellate rules governing review of summary judgments were set forth in *Finstad v. Washburn University*, 252 Kan. 465, 468, 845 P.2d 685 (1993), as follows:

"Where the facts are not disputed, summary judgment is appropriate. We must view those facts in the light most favorable to the party who defended against the motion for summary judgment, and if reasonable minds could differ as to the conclusion drawn from the facts, summary judgment must be denied. However, if the only questions presented are questions of law, the summary judgment is proper."

The first issue raised is whether the district court erred in holding that telephone calls were not "meetings" under KOMA and, hence, were not within the purview of KOMA. This is a question of law.

Preliminarily, we note there is no common-law right of the public or press to attend meetings of governmental bodies, and any such right is created by statute and is governed by the statutory language employed.

The pertinent portions of KOMA are K.S.A. 75-4317 and 75-4317a, which provide:

75-4317:

"(a) In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the policy of this state that meetings for the conduct of governmental affairs and the transaction of governmental business be open to the public.

"(b) It is declared hereby to be against the public policy of this state for any such meeting to be adjourned to another time or place in order to subvert the policy of open public meetings as pronounced in subsection (a)."

75-4317a:

"As used in this act, 'meeting' means any prearranged gathering or assembly by a majority of a quorum of the membership of a body or agency

subject to this act for the purpose of discussing the business or affairs of the body or agency."

In *State ex rel. Murray v. Palmgren*, 231 Kan. 524, Syl. ¶ 4, 646 P.2d 1091 (1982), we held:

"The Kansas Open Meetings Act, K.S.A. 75-4317 *et seq.*, was enacted for the public benefit and is therefore construed broadly in favor of the public to give effect to its specific purpose."

The State contends that, under the requisite broad construction, a telephone call is included in the term "meeting." We do not agree.

Preliminarily, some rules of statutory construction need to be stated. Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, Syl. ¶ 1, 855 P.2d 956 (1993). When a statute is clear and unambiguous, the court must give effect to the legislative intent therein expressed rather than make a determination of what the law should or should not be. Thus, no room is left for statutory construction. *State v. Schlein*, 253 Kan. 205, Syl. ¶ 4, 854 P.2d 296 (1993). When determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning, and courts are not justified in disregarding the unambiguous meaning. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 7, 834 P.2d 368 (1992). It is presumed the legislature understood the meaning of the words it used and intended to use them. *Rogers v. Shanahan*, 221 Kan. 221, 223-24, 565 P.2d 1384 (1976). The purpose of all rules of statutory construction is to ascertain the intention of the legislature as expressed in the statute. These rules do not permit the courts to read into a statute something that does not come within the wording of the statute. *Joe Self Chevrolet, Inc., v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 633, 802 P.2d 1231 (1990). Statutes are to be construed to avoid unreasonable results. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

Meeting is defined in K.S.A. 75-4317a as a prearranged "gathering or assembly." Reflective of the ordinary meanings of those terms are the following:

"Gathering" means "to bring together into a crowd, group, body, or mass." Webster's Third International Dictionary 940 (1986). The verb "to gather" means "to come or bring together into a group, mass, or unit." Webster's New World Collegiate Dictionary 475 (5th ed. 1977).

"Assembly" means "a company of persons collected together in one place usually for some common purpose." Webster's Third International Dictionary 131 (1986). Another dictionary defines the term "assembly" as "[t]he concourse or meeting together of a considerable number of persons at the same place." Black's Deluxe Law Dictionary 115 (6th ed. 1990).

Inherent in the ordinary meaning of "gathering" or "assembly" is the requirement that persons at a gathering or assembly are in the physical presence of each other. Granted, in some instances space limitations might result in an overflow crowd being in a hallway or listening in and participating from an adjacent room, but such persons are attending the gathering or assembly. The parties to a telephone conversation are not within the ordinary meaning of a gathering or assembly.

The same result is reached when we study the legislative history involved.

In 1976, K.S.A. 75-4317 was in the same form as it is today and is repeated herein for convenience as follows:

"(a) In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the policy of this state that meetings for the conduct of governmental affairs and the transaction of governmental business be open to the public.

"(b) It is declared hereby to be against the public policy of this state for any such meeting to be adjourned to another time or place in order to subvert the policy of open public meetings as pronounced in subsection (a)."

In 1977, S.B. 5 was introduced, which would have added the following section thereto:

"(c) No chance meeting, social meeting or electronic or written communication shall be used in circumvention of the spirit or requirements of this act."

The word "prearranged" has never been contained in K.S.A. 75-4317. The purpose of the proposed amendment was to "strengthen" KOMA by prohibiting the stated means being used to circumvent the act. Re: Proposal No. 18—Open Public Meetings Law, Report on the Kansas Legislative Interim Studies to the 1977 Legislature.

Clearly, then, these four alternative opportunities for communication were not contemplated to be within the term "meeting" in K.S.A. 75-4317. The proposed amendment to the statute was, however, deleted, and what was codified as K.S.A. 75-4317a was enacted. This statute provides:

"As used in this act, 'meeting' means any prearranged gathering or assembly by a majority of a quorum of the membership of a body or agency subject to this act for the purpose of discussing the business or affairs of the body or agency."

The legislature had the opportunity to expand the term meeting to include telephone calls, but instead narrowly defined meeting to include only a prearranged gathering or assembly. Thus, "meeting" requires the gathering or assembly of persons in the physical presence of each other.

In *Roanoke School Bd. v. Times-World*, 226 Va. 185, 307 S.E.2d 256 (1983), the Virginia Supreme Court was called upon to determine whether a prearranged telephone conference call in which all members of a school board participated was a "meeting" within the purview of Virginia's Freedom of Information Act.

The Virginia court stated:

"We are well aware of the salutary purposes of freedom of information laws, of the statutory requirement that such laws be liberally construed to promote their purposes, and that any exceptions from applicability be narrowly construed. However, there is no common-law right of the public or press to attend the meetings of governmental bodies. Therefore, in the absence of a statutory prohibition, there can be no legal or constitutional objection to a governmental body transacting certain business by means of a telephone conference call. If such a call is prohibited, the prohibition must be found in legislative enactment. It cannot be done by judicial fiat.

"The Virginia Freedom of Information Act contains a very specific definition of the words 'meeting' or 'meetings' which the Act was designed to cover. A 'meeting' under the statute is deemed to occur when a governmental body is *sitting* as a body or entity or as an informal *assemblage*.' Code § 2.1-341(a) (emphasis added). Nowhere in the Act is any reference

made to a telephone call or conversation. The commonly accepted meaning of the word 'meeting' is that found in *Black's Law Dictionary* 886 (5th ed. 1979). There, 'meeting' is defined as '[a] coming together of persons; an assembly. Particularly, in law, an assembling of a number of persons for the purpose of discussing and acting upon some matter or matters in which they have a common interest.' *Webster's Third New International Dictionary* 1404 (1971) defines 'meet' as follows: '[T]o come together usually from different directions: come face to face . . . to hold a session: convene for worship, business, or other purpose.' 'Meeting' is defined there as 'an act or process of coming together . . . a gathering for business, social, or other purposes.'

"Irrespective of one's preferred definition, whether it be coming together, assembling, gathering, or meeting, the *physical* presence of the participants is essential. A telephone conference call does not qualify. A participant in a telephone call can communicate with others, listen to them, speak and be heard, but none of this is done in the physical presence of individuals who have come together, met, assembled, and are 'sitting' as a body or entity.

"The appellees argue that if a telephone conference call is not prohibited by the Act, then the Act contains a 'glaring loophole.' This may be, but, if true, it is a loophole that must be closed and corrected by the General Assembly, not by the courts. We are not dealing here with the denial of a constitutional right but with a statute whose subject matter is one within the discretion of the legislature." 226 Va. at 191-92.

The same rationale applies with equal force to the issue before us and is persuasive. Telephone calls are not included in KOMA. The legislature recognized this fact in 1977 and declined to include them. If they are to be included, it is up to the legislature to do so.

If the legislature does amend KOMA, hopefully, such amendments will clearly spell out what conduct is to be prohibited by the act. K.S.A. 75-4320a(b) places the burden of proof on the public body or agency to sustain its action. In *State ex rel. Murray v. Palmgren*, 231 Kan. 524, Syl. ¶ 10, this court held:

"To 'knowingly' violate the act means to purposefully do the acts denounced by the Kansas Open Meetings Act and does not contemplate a specific intent to violate the law. K.S.A. 75-4320(a)."

Public officials need to know just what conduct is proscribed by KOMA. Uncertainty is not in the best interest of either the public or public officials subject to KOMA. We note over 50 Attorney General opinions have been issued to answer various

questions raised by KOMA. Considerable confusion obviously exists as to what KOMA requires.

The facts herein illustrate the difficulty. The calls were paid for with public funds. The State contends that the very existence of the calls establishes wrongdoing: If county business was discussed, then KOMA was violated; if county business was not discussed, then a misuse of public funds occurred. Since the action herein was filed, the three commissioners do not communicate with each other directly by telephone but tell a secretary what to say to another commissioner. The abundance-of-caution approach taken as a direct result of uncertainty can lead to absurd and inefficient results not required by KOMA.

In view of our determination of this issue, other issues raised need not be addressed.

The judgment is affirmed.

SIX, J., concurring and dissenting: I concur in the result. Without evidence of prearrangement, the telephone communications between the commissioners were not violations of KOMA. I dissent from the majority's broad sweep which excludes prearranged conference calls from the purview of KOMA. I disagree with the majority's decision to limit 'the word "gathering" to face-to-face relationships.

The thrust of KOMA is openness in the cluster of concepts that flavor the democratic process: discussion, analysis, and decision-making among members of a governing body. The legislature intended that discussion, analysis, and decision-making should not occur in secret and undetected, protected by the contemporary camouflage of the speakerphone. I do not believe the legislature intended, for example, that government be conducted by the prearranged 5:30 p.m. conference call, with each commissioner gathered beside his or her speakerphone. The governing body's staff is on the line. The chairperson announces the agenda, discussion begins, action follows. The governing body decides, before the telephones are hung up, which member will move and who will second the evening's agenda items. A charade is played out later that night at the regular weekly public meeting.

The philosophy of KOMA is addressed in K.S.A. 75-4317(a):

"In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the policy of this state that meetings for the conduct of governmental affairs and the transaction of governmental business be open to the public."

"The open meetings principle is based on the basic belief that the people have a right to know the public business and that public knowledge and information is essential to the effective functioning of the democratic process." Tacha, *The Kansas Open Meeting Act: Sunshine on the Sunflower State?*, 25 Kan. L. Rev. 169, 170 (1977). The concept of the liberal interpretation and broad construction of KOMA which is required by *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 531, 646 P.2d 1091 (1982), is significant in resolving the instant case. The concept authenticates inclusion of prearranged conference calls within KOMA.

Openness in government is the dominant hue in KOMA fabric. I would limit the decision in the case at bar to the facts and affirm summary judgment, reasoning that the calls were not "prearranged."