## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Superior Insurance Co.

v.

James Allen Cencewizki et al.

January 27, 1995

Case No. CH94-155

BY JUDGE WILLIAM H. LEDBETTER, JR.

The question presented in this declaratory judgment suit is whether an automobile liability insurance carrier may discharge its duty to defend its insured by paying the entire amount of its available coverage to the claimant under the circumstances described in Virginia Code § 38.2-2206(K).

### Facts

The pertinent facts are not in dispute. Joyce Anne Shaw was injured when the automobile in which she was riding collided with a vehicle operated by James Allen Cencewizki. Shaw instituted an action against Cencewizki in this court (# CL94-106) to recover damages for her injury.

Superior Insurance Company is Cencewizki's insurer. Its policy provides coverage for bodily injury up to $25,000.00 for any person injured in an accident involving Cencewizki's operation of his vehicle. In addition, Superior agreed to "defend any suit alleging such bodily injury . . . and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient."

State Farm Mutual Insurance Company insures Shaw. Its policy contained uninsured/underinsured motorist coverage. Shaw's claim is in excess of the $25,000.00 limit in Cencewizki's policy. Shaw's underinsured motorist insurance coverage also is in excess of the $25,000.00 limit in Cencewizki's policy.

After investigating the occurrence, Superior paid various other claims arising from the accident and then tendered the entire amount of its available coverage, $25,000.00, to Shaw. Superior did not obtain a release from Shaw. Superior gave prompt written notice to Cencewizki and State Farm that it had tendered $25,000.00 to Shaw, that it deemed such payment to satisfy all obligations under its policy with Cencewizki and that it would not be providing a defense for Cencewizki against Shaw's claim.

Superior filed this declaratory judgment suit, joining Cencewizki, Shaw and State Farm as defendants, asking the court to declare that it has no further duty to provide a defense for Cencewizki against Shaw's claim.

Trial of the declaratory judgment suit was held on November 17, 1994. After hearing the evidence, almost all of which was stipulated, and arguments of counsel, the court agreed with Superior that under the circumstances of this case, § 38.2-2206(K) relieves it of its duty to provide a defense to Cencewizki against Shaw's pending claim.

Before a final order could be prepared and entered, State Farm filed a motion to reconsider. Thus, when the order memorializing the court's ruling was signed and entered, the court suspended and vacated the order pending a decision on State Farm's motion to reconsider.

The case was reargued on December 27, 1994, on State Farm's motion and taken under advisement. Counsel have submitted memoranda.

### General Duty to Defend

Under a provision like the one contained in Cencewizki's policy, an insurer's obligation to defend is broader than its obligation to pay. The obligation to defend arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy. On the other hand, such a policy provision places no obligation on the insurer to defend an action against the insured when, under the allegations of the complaint, it would not be liable under its policy for any recovery. *Brenner v. Lawyers Title Insurance Corp.*, 240 Va. 185 (1990); *Lerner v. Safeco Insurance*, 219 Va. 101 (1978).

The appellate court decisions in Virginia that address an insurer's duty to defend generally have involved questions about whether the claim made against the insured falls within the *risk covered by the policy*. See, e.g., *Brenner, supra*. When the question has been about damages — for example, punitive damages supposedly not covered by the policy and found to be groundless by the trial court — it has been held that the insurer must defend because the groundless punitive damages claim was merely ancil-

lary to a claim for compensatory damages that arose from a risk covered by the policy. See, e.g., *Lerner, supra.*

There is a sharp division among the jurisdictions about whether an insurer under a liability policy with language similar to that contained in Superior's policy can absolve itself of its duty to defend the insured by tendering its policy limits when the subject of the claim is within the risks covered by the policy. See *Liability Insurer's Duty to Defend*, 27 A.L.R. 3d 1057. The courts of Virginia have not addressed this precise question in any reported decision. However, from a reading of the rule enunciated in cases involving other aspects of an insurer's duty to defend, liability insurers have customarily provided a defense to their insureds under such circumstances, and this court is of the opinion that that is the better view of the rule.

### The Duty to Defend Under § 38.2-2206(K)

In 1988, the General Assembly amended the uninsured motorist insurance statute by adding a subsection that provides as follows:

> K. A liability insurance carrier providing coverage under a policy issued or renewed on or after July 1, 1988, may pay the entire amount of its available coverage without obtaining a release of a claim if the claimant has underinsured insurance coverage in excess of the amount so paid. Any liability insurer making a payment pursuant to this section shall promptly give notice to its insured and to the insurer which provides the underinsured coverage that it has paid the full amount of its available coverage. Virginia Code § 38.2-2206.

Superior contends that the purpose and effect of subsection K is to provide a means by which an automobile liability insurer can, under the circumstances described in the statute, pay its policy limits to a claimant and relieve itself of its obligation to defend its insured in litigation arising from the claim. In other words, if a bodily injury or property damage claimant has underinsurance coverage in excess of the amount of coverage provided by a tortfeasor's liability insurer, the tortfeasor's insurer may pay to the claimant the policy limits, even without obtaining a release, then give notice to its insured and the claimant's underinsured insurance carrier, and thereby absolve itself of further responsibility in the matter, including its obligation to provide a defense to the insured in litigation pursued by the claimant.

Obviously, the statute does not say that. Nevertheless, that result must be implied, according to Superior's argument because otherwise the statute would have no purpose or meaning.

At the trial, as noted above, the court agreed with Superior. In explaining its ruling from the bench, the court observed:

> [T]he only purpose that anybody can think of for that [legislation] would be to permit the liability carrier to say to the insured, now, we're fulfilling our obligation to you by paying out every dime we are obligated to pay out under the policy, and we're walking away; at the same time, we're notifying the underinsured motorist carrier that if you want to come into this [litigation], you'd better come on because we're not going to be there .... Why would a liability insurance carrier ever want to pay the entire amount under its policy if it can't walk away from its obligation? .... I can't see any other reasonable [interpretation] to give [to the statute] than that advocated by Superior Insurance Company.

In its motion to reconsider, State Farm asks the court to revisit its ruling in light of the profound change that it would have upon the custom and practice of defending bodily injury claims in Virginia and prior law; and State Farm presents for the first time the legislative history of subsection K which, it argues, negates the argument advanced by Superior.

### Statutory Construction

The cardinal rule of statutory construction is to ascertain the intention of the legislature. All other rules are subservient. *Board of Supervisors v. King Land Corp.*, 238 Va. 97 (1989); 17 M.J., *Statutes*, § 35. In fact, all rules of statutory construction are designed to ascertain legislative intent. Primarily, legislative intent is collected from the words. If the words used in the statute are plain and unambiguous, no other rule of construction is necessary unless a literal interpretation would involve a manifest absurdity. *Carter v. Nelms*, 204 Va. 338 (1963); 17 M.J., *Statutes*, § 37. If legislative intent cannot be readily found in the words themselves, it is the duty of the court to consider the object and purpose of the statute. *Ambrogi v. Koontz*, 224 Va. 381 (1982). If the legislative will can be revealed by resorting to the history of a statute and to the processes of its enactment, it is the duty of the court to give it such reasonable construction as will effect its purpose. In doing this, the cause which moved the legislature in the

enactment of the statute should be considered. As sometimes said, consideration must be given to the evil sought to be remedied by the statute. *Roanoke City School Board v. Times-World Corp.*, 226 Va. 185 (1983); *American Airlines v. Battle*, 181 Va. 1 (1943); 17 M.J., *Statutes*, § 38. Finally, another rule of construction provides that necessary implications in a statute must be included in it in order to make the terms actually used have meaning and effect. 17 M.J., *Statutes*, § 43.

As aids to construing statutes, especially in troublesome cases, courts have indulged in certain presumptions. The legislature is presumed to know the law bearing on the subject with which it proposes to deal. The legislature is presumed to have been cognizant of all existing facts and circumstances bearing upon its enactments. It is presumed, in absence of words or legislative history indicating the contrary, that the legislature did not intend to alter, disregard, repeal, or unsettle existing law. See 17 M.J., *Statutes*, § 46 and § 47.

Applying these rules of construction to the statute under review, it is clear that the court cannot ascertain from the words of the statute alone that the legislature intended by its enactment to permit an auto liability insurer to absolve itself of its duty to defend by paying to the claimant the full amount of its available coverage. Obviously, the statute does not *say* that. Although the statute is specific and unambiguous in what it does permit the insurer to do under the circumstances described there, the statute contains no expression regarding the effect of those permitted actions on the insurer's obligation to defend its insured in pending litigation. Therefore, in order to ascertain whether the legislature intended that effect, the object and purpose of the enactment must be considered. Where the object and purpose of the statute cannot be ascertained without resort to legislative history, the court must review the history of the statute and the processes of its enactment.

### Legislative History of Subsection K

There is no legislative history of the law now embodied in subsection K of § 38.2-2206 prior to the enactment of that provision. In other words, the 1988 addition of subsection K to the uninsured motorist insurance statute (§ 38.2-2206) does not repeal or modify prior legislation. It was the legislature's first occasion of addressing the subject by enactment of a statute.

The history of subsection K is as follows.

The legislation began as House Bill No. 467 offered by three patrons. The proposed bill sought to add a new subsection to § 38.2-2206 in three subparts. The bill provided as follows:

> K.1. Where any claimant has a claim against an alleged tortfeasor who is insured by a motor vehicle liability insurance policy and the claimant has underinsurance coverage, the liability insurer, irrespective of any duty imposed by its policy, shall have no duty to obtain a release of the claim against its insured nor to defend any action against its insured subsequent to its having paid as damages to such claimant the extent of its coverage.
>
> 2. When payment is made the liability insurer shall give reasonable notice to the insured and the insurer providing underinsured coverage that it has paid the extent of its coverage pursuant to this section.
>
> 3. This subsection shall apply to policies issued or renewed on or after July 1, 1988.

According to the House Journal, the bill was referred to the appropriate committee on January 22, 1988. The bill passed the committee, went to second reading, and was ordered to be engrossed. On third reading, the House defeated the bill 45-51.

On February 3, 1988, a motion to reconsider the vote was made and agreed to. One of the original patrons of the bill offered the following amendment: to strike the phrase "nor to defend any action against the insured." The amendment was accepted, and the bill, thus amended, passed the House 89-5.

When the bill reached the Senate, another amendment was offered and agreed to. According to the Senate Journal, that amendment struck the entire bill and inserted the following language:

> K. A liability insurance carrier providing coverage under a policy issued or renewed on or after July 1, 1988, may pay the entire amount of its available coverage without obtaining a release of a claim if the claimant has underinsured insurance coverage in excess of the amount so paid. Any liability insurer making a payment pursuant to this section shall promptly give notice to its insured and to the insurer which provides the underinsured coverage that it has paid the full amount of its available coverage.

The bill passed the Senate in that form 39-0 on March 9, 1988.

The Senate amendment was returned to the House, and on March 1, 1988, it passed the House 95-0. Thereafter, the Senate version of the bill, now codified as subsection K of § 38.2-2206, was formally enacted.

Thus, it is apparent from a review of the legislative history of subsection K that the legislature — at least the House — had difficulty deciding whether the statute should address an insurer's duty to defend. In fact, only after that language was removed did the bill pass the House. In the Senate, the bill was totally rewritten, without any reference to the insurer's duty to defend. The Senate's version then passed the House unanimously.

Because there are no records of debates, it is impossible to know why the bill was completely rewritten in the Senate or why the House, having passed its bill in significantly different form, ultimately accepted the Senate version. The court cannot engage in speculation regarding those matters.

## Decision

Using the rules of construction explained above and having now reviewed the legislative history of subsection K for the first time, the court is of the opinion that its original ruling in favor of Superior was erroneous. The court cannot read into the statute a termination or discharge of an insurer's duty to defend when no such language appears in it, when at least one house of the legislature specifically struck language that spoke to that point and when such an interpretation would have a substantial impact on existing circumstances. It is axiomatic that if the "evil" the legislature sought to "remedy" by enactment of subsection K was the liability carrier's continuing obligation to defend after tendering its available coverage to the claimant, it could have said so. In fact, in this instance, it is quite obvious how it could have done that since the original bill contained such specific language but was defeated in that form.

For these reasons, the motion to reconsider is granted, and upon reconsideration, the court holds that the relief sought by Superior in its motion for declaratory judgment must be denied.