Stephen L. Martino, Executive Director Kansas Racing and Gaming Commission 700 SW Harrison, Suite 420 Topeka, Kansas 66603
Dear Mr. Martino:
You request our opinion on the proper legal interpretation of K.A.R.112-13-2(c) as it relates to whether "Kansas-bred monies"[1] should be paid to the breeders of greyhounds, or instead to any subsequent owner of these greyhounds. You indicate that this regulation was intended by some to provide that the money in question "follow" the animal (a policy that was intended to increase the value of animals bred in Kansas). However, some race tracks and breeders apparently question this reading of the regulation and question the authority of the Commission to promulgate the regulation in question if that is its meaning; they believe that the money in question should be paid only to the Kansas breeders of qualified animals. You therefore seek our opinion "as to whether K.A.R. 112-13-2(c) is in contradiction to any statute or other legislative intent on the matter of breed fund distribution." K.A.R.112-13-2(c) states:
 "(c) Each female greyhound specified in subsection (a) shall be owned or leased by a Kansas-qualified breeder within 45 days of the breeding date. To be a Kansas-qualified breeder, the person owning or leasing the female greyhound shall have been a resident of the state of Kansas for a minimum of two years before breeding. Each pup shall be whelped and raised for the first six months of life in the state of Kansas. Kansas-whelped status shall remain with the greyhound and shall transfer to all subsequent owners of the greyhound."[2]
This regulation provides guidance on how to determine "Kansas-whelped status" and who benefits from that status. It does not speak to distribution of any monies. The statutes cited as authorizing this regulation are K.S.A. 74-8832 and 74-8804; neither of these statutes speak to payment of moneys, either to breeders or to greyhound owners.[3] Thus, we do not read K.A.R. 112-13-2(c) to require distribution of Kansas-bred monies in any particular way.
Neither do we read other regulations constituting the Kansas-Whelped Program to require distribution of Kansas-bred monies in a particular way. K.A.R. 112-13-3 provides for special treatment (publicly provided kennels) for Kansas-whelped greyhounds.[4] K.A.R. 112-13-4 provides for a special account entitled the "breakage open stakes accounting."[5] K.A.R. 112-13-5(e) provides the formula for collection of these specific monies:
 "Each organization licensee shall pay an amount equal to the number of points accumulated by each Kansas-whelped greyhound for the calendar month multiplied by the dollar value per point for the calendar month."
While these regulations establish the procedure for collecting monies, none specifically states whether the monies thus collected should be distributed or paid, either to the greyhound owner or breeder.
K.S.A. 2005 Supp. 74-8821[6] provides in pertinent part:
 "(c) Except as provided by subsection (e), all breakage proceeds from parimutuel wagering conducted by the organization licensee on live greyhound races conducted by the licensee shall be distributed by the licensee not later than the 15th day of the month following the race from which the breakage is derived as follows:
 "(1) An amount equal to 50% of the breakage shall be used at racetrack facilities where derived to supplement open stakes races as approved by the commission; and
 "(2) an amount equal to 50% of the breakage shall be paid as purses directly to the breeders of Kansas-whelped greyhounds pursuant to rules and regulations of the commission."[7]
You inform us that the monies in question are those set forth in K.S.A. 74-8821(c)(2).
In interpreting a statute, a court must give effect to its plain and unambiguous language, without determining what the law should be.[8]
Under the doctrine of operative construction, an administrative agency's interpretation of a statute that it is charged with enforcing is entitled to judicial deference in certain circumstances.[9] If there is a rational basis for the agency's interpretation, it should be upheld on judicial review.[10] Although given deference, an agency's interpretation of a statute is not binding and the final construction of a statute lies with the appellate courts.[11] When interpreting a statute, a court strives to give effect to the intent of the Legislature.[12] An administrative agency is a creature of statute and its powers are entirely dependent upon authorizing statutes.[13] An administrative agency's regulations cannot conflict with statutory provisions.[14]
In interpreting statutes, case law and K.S.A. 77-201 Second dictate that words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings.
We have found no statutory or regulatory definition of "breeder" that would support payment of the K.S.A. 2005 Supp. 74-8821(c)(2) monies to subsequent owners of a Kansas-whelped greyhound who are not the breeders of Kansas greyhounds. While that policy may be favored, when a statute is clear and unambiguous, courts must give effect to legislative intent therein expressed rather than determine what the law should or should not be; no room is left for statutory construction.[15] We believe the terms of K.S.A. 2005 Supp. 74-8821(c)(2) may only be read to allow payment of those specific monies to the breeder of a Kansas-whelped greyhound.[16]
In conclusion, funds collected pursuant to K.S.A. 2005 Supp. 74-8821
may only be distributed in accordance with the terms set forth in that statute. K.S.A. 2005 Supp. 74-8821(c)(1) and (2) provide that 50% of the breakage funds shall be paid to supplement open stakes races and the other 50% shall be paid as purses directly to the breeders of Kansas-whelped greyhounds, pursuant to rules and regulations of the Racing and Gaming Commission. The Commission's regulations, particularly K.A.R. 112-13-21(c), do not (and cannot be interpreted to) provide for payment of K.S.A. 2005 Supp. 74-8821(c)(2) monies other than to the breeders of Kansas-whelped greyhounds.
Sincerely,
 Phill Kline Attorney General
 Theresa Marcel Bush Assistant Attorney General
PK:JLM:TMB:jm
[1] Those that are the subject of K.S.A. 2005 Supp. 74-8821(c)(2).
[2] Emphasis added.
[3] K.S.A. 74-8804 authorizes the Commission to adopt regulations; K.S.A. 74-8832 concerns registration of greyhounds, and does not provide for payment of breakage purses or greyhound development funds to either breeders or greyhound owners.
[4] The statutes cited in this regulation as authority and being implemented are K.S.A. 74-8804, the general authority of the Commission, and K.S.A. 74-8833, which has one sentence stating: "The commission shall provide by rules and regulations for the establishment of a Kansas resident racing program."
[5] The statutes cited in this regulation as authority and being implemented are K.S.A. 74-8804 and K.S.A. 2005 Supp. 74-8821.
[6] Cited as the statute being implemented by K.A.R. 112-13-4 and112-13-5.
[7] Emphasis added.
[8] Citizens' Utility Ratepayer Bd. v. State Corp. Com'n of State ofKan., 264 Kan. 363, 410 (1998).
[9] Trees Oil Co. v. KCC, 279 Kan. 209, 226 (2005).
[10] See Curb v. KCC, 264 Kan. at 410.
[11] Bluestem Telephone Co. v. Kansas Corp. Com'n, 33 Kan.App.2d 817,823 (2005).
[12] Fieser v. Kansas State Bd. of Healing Arts, 281 Kan. 269, 272
(2006).
[13] Pork Motel Corp. v. KDHE, 234 Kan. 374, 379 (1983).
[14] See Bluestem, 33 Kan.App.2d at 823.
[15] State ex rel. Stephan v. Board of County Comm'rs of SewardCounty, 254 Kan. 446, 448 (1994).
[16] We note that subsection (e) of K.S.A. 2005 Supp. 74-8831 provides that certain funds follow the animal, however, this subsection only applies to situations involving a track that has ceased operations.