PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Millette, S.J.

REVI, LLC

v.  Record No. 141562

OPINION BY
JUSTICE WILLIAM C. MIMS
September 17, 2015

CHICAGO TITLE INSURANCE COMPANY


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

In this appeal, we consider whether Code § 38.2-209(A) requires a trial judge, rather than a jury, to determine whether an insurer committed a bad faith breach of an insurance contract warranting an award of attorney's fees to the insured.

I. BACKGROUND AND MATERIAL PROCEEDINGS

In 2000, REVI, LLC ("REVI") purchased a five-acre parcel of residential property along the Potomac River in Fairfax County (the "Property"). At that time, REVI also purchased a title insurance policy from Chicago Title Insurance Company ("Chicago Title"), which insured against "loss or damage" caused by "[a]ny defect in or lien or encumbrance on the title," among other risks.

In 2004, REVI discovered that the Property was subject to a number of restrictions contained in a stipulation arising out of a condemnation action filed by the United States in 1963. These restrictions prohibited tree removal except in limited circumstances, prescribed permissible building heights, and provided that the property could be developed only in accordance with a "master plan" approved by the United States Secretary of the Interior. Upon learning of the restrictions, REVI filed a claim with Chicago Title.

In 2005, Chicago Title accepted the claim and began negotiations with the National Park Service, a division of the United States Department of the Interior, seeking a release of the

restrictions. The negotiations resulted in a new agreement (the "Release and Easement Agreement"), which recognized that REVI could subdivide the Property and construct five residences in accordance with the original stipulation without the consent of the United States. The Release and Easement Agreement modified slightly the prohibition on tree removal, allowing REVI to request permission to remove certain trees from the Property. However, the Release and Easement Agreement carried over the restriction on building height and created some additional restrictions. After receiving assurances that Chicago Title would indemnify it for any diminution in the Property's value as a result of the restrictions, REVI signed the Release and Easement Agreement in September 2011.

Subsequently, Chicago Title informed REVI that the restrictions contained in the Release and Easement Agreement did not diminish the value of the Property, and as a result, REVI had not suffered a compensable loss under the policy. However, Chicago Title invited REVI to submit an updated Proof of Loss.

In April 2012, REVI submitted an updated Proof of Loss, claiming that the restrictions contained in the Release and Easement Agreement had diminished the value of the property by $1.6 million. Chicago Title reiterated its position that the restrictions contained in the Release and Easement Agreement did not diminish the value of the Property, and it denied REVI's claim.

On April 2, 2013, REVI filed a complaint in the Circuit Court of Fairfax County, alleging that Chicago Title had breached the title insurance policy. REVI also alleged that Chicago Title had acted in bad faith, and it requested an award of attorney's fees and costs pursuant to Code § 38.2-209. REVI demanded a jury trial "on all counts so triable."

Chicago Title filed a motion seeking to bifurcate the trial and seeking to have the trial judge, rather than the jury, consider the issues of bad faith and attorney's fees under Code § 38.2-

209(A). Chief Judge Dennis J. Smith ordered the trial to be bifurcated, but he also ruled that Code § 38.2-209(A) permitted the jury to determine whether Chicago Title had breached the insurance contract in bad faith, and accordingly, permitted the jury to award attorney's fees.

Judge Brett A. Kassabian presided over the jury trial. The jury found that Chicago Title had breached the contract and awarded REVI $1,241,000 in damages. Then, the jury found that Chicago Title had acted in bad faith and awarded REVI $442,000 in attorney's fees and costs.

After receiving the verdicts, Judge Kassabian sua sponte suspended the final order. He then asked the parties to submit post-trial briefs on whether Code § 38.2-209(A) permits a jury to determine whether an insurer breached an insurance contract in bad faith and award attorney's fees and costs.

Upon further consideration, Judge Kassabian vacated the jury's award of attorney's fees and costs, ruling that Code § 38.2-209(A) requires a judge, not a jury, to determine whether an insurer committed a bad faith breach of an insurance contract warranting an award of attorney's fees. Judge Kassabian then reconsidered the evidence de novo and concluded that the evidence was insufficient to prove that Chicago Title had acted in bad faith.

REVI filed a petition for appeal challenging (1) the ruling that only a judge, not a jury, may determine whether an insurer breached an insurance contract in bad faith, and accordingly, award attorney's fees and costs to the insured pursuant to Code § 38.2-209(A) and (2) the factual finding that Chicago Title did not act in bad faith. We awarded REVI an appeal only on its first assignment of error.

## II. ANALYSIS

### A. Standard of Review

3

We review questions of statutory interpretation de novo. Eberhardt v. Fairfax Cnty. Emps. Ret. Sys., 283 Va. 190, 194, 721 S.E.2d 524, 526 (2012). We look to the words of the statute to determine its meaning, and we consider the entire statute to "place its terms in context." Id. "[I]t is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." VEPCO v. Board of Cnty. Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983).

B. The Meaning of "court" in Code § 38.2-209

Code § 38.2-209(A) states:

> [I]n any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy . . . or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

(Emphasis added.) REVI argues that the meaning of "court," as used in Code § 38.2-209(A), is ambiguous. REVI contends that the word "court" when used in the Code sometimes includes a "jury" and may refer to either the judge or the jury in this statute. To support its argument, REVI draws an analogy between Code § 38.2-209(A) and a common law bad faith claim. REVI argues that a determination of bad faith is a factual finding, and it asserts that the common law entitled litigants to a jury trial on questions of fact. REVI concludes that interpreting "court" to exclude a jury alters the common law rule, ignores canons of statutory construction, and violates its constitutional right to have a jury decide whether bad faith exists. We disagree.

Code § 38.2-209 traces its origins to former Code § 38.1-32.1, enacted in 1982. 1982 Acts ch. 576. As enacted, former Code § 38.1-32.1 (Cum. Supp. 1982) provided that the insured

4

could recover "costs and such reasonable attorney fees as the <u>trial judge</u> after verdict may award if it is determined by such <u>trial judge</u> in such case that the insurer has not in good faith either denied coverage or failed or refused to make payment to the insured under such policy." (Emphasis added.)

Two years later, the General Assembly directed the Virginia Code Commission to study Title 38.1 of the Code, consisting of the Commonwealth's insurance laws, and "report its findings in the form of a revision." H. J. Res. 1, Va. Gen. Assem. (Reg. Sess. 1984). The Commission submitted its report to the General Assembly in 1986. Virginia Code Commission, <u>Report to the Governor and General Assembly of Virginia [The Revision of Title 38.1 of the Code of Virginia]</u> (Jan. 1986), H. Doc. No. 17 (1986). Subsequently, the General Assembly enacted 1986 Acts ch. 562 (the "Recodification Act"), titled "An Act to amend the Code of Virginia by adding a title numbered 38.2 . . . and to repeal Title 38.1 of the Code of Virginia . . . so as to revise, rearrange, amend and recodify the insurance laws of Virginia generally." The Recodification Act enacted the text currently codified as Code § 38.2-209(A).[1]

REVI invokes the "presumption that the General Assembly, in amending a statute, intended to effect a substantive change in the law." <u>West Lewinsville Heights Citizens Ass'n v. Board of Supervisors</u>, 270 Va. 259, 265, 618 S.E.2d 311, 314 (2005) (citations omitted). It contends that the term "trial judge" clearly excluded a jury. Therefore, it argues that the substitution of "court" for "trial judge" leads to the conclusion that "court" refers to either a judge or a jury. However, "there is [also] a presumption that a recodified statute does not make substantive changes in the former statute unless a contrary intent plainly appears in the recodified statute." <u>Waldrop v. Commonwealth</u>, 255 Va. 210, 214, 495 S.E.2d 822, 825 (1998)

---

[1] The only change in this statute from 1986 to the present was the addition of the word "fidelity" before "bond." <u>See</u> 2006 Acts ch. 279.

(citing State Farm Mut. Auto. Ins. v. Major, 239 Va. 375, 378, 389 S.E.2d 307, 309 (1990)).

Thus, we turn to the language of the entire Recodification Act to determine whether the General

Assembly intended to make a substantive change. See Eberhardt, 283 Va. at 194-95, 721 S.E.2d

at 526 (courts may reference the Acts of Assembly as the "authoritative text" of a single

legislative enactment).

From the Recodification Act, the provision subsequently codified as Code § 38.2-807

stated:

> In any action against an unlicensed insurer upon an insurance
> contract issued or delivered in this Commonwealth to a resident of
> this Commonwealth or to a corporation authorized to do business in
> this Commonwealth, the court may allow the plaintiff a reasonable
> attorney fee if (i) the insurer has failed to make payment in
> accordance with the terms of the contract for thirty days after
> demand prior to the commencement of the action and (ii) the court
> concludes that the refusal was vexatious and without reasonable
> cause. The fee shall not exceed twelve and one-half percent of the
> amount that the court or jury finds the plaintiff is entitled to recover
> against the insurer.

1986 Acts ch. 562 (emphasis added).[2] The meaning of this text is plain: the General Assembly

did not intend for the word "court" to include "jury" in this provision. Thus, Code § 38.2-807

clearly requires the judge, not the jury, to determine whether the insurer acted in bad faith before

awarding attorney's fees to the insured.

Significantly, Code § 38.2-807 — like Code § 38.2-209 — regulates the court's authority

to award attorney's fees and costs to the insured when an insurer breaches an insurance contract,

limiting its authority to instances of bad faith. We construe "all statutes in pari materia in such a

manner as to reconcile, if possible, any discordant feature which may exist, and make the body of

---

[2] The General Assembly amended Code § 38.2-807 in 2010. However, none of the amendments are relevant to the determination of the meaning of the word "court" in Code § 38.2-209(A). See 2010 Acts ch. 343.

6

the laws harmonious." Lucy v. County of Albemarle, 258 Va. 118, 129-30, 516 S.E.2d 480, 485 (1999); Eberhardt, 283 Va. at 195, 721 S.E.2d at 526 ("[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning."). In light of the relationship between the two sections in this single enactment, we conclude that "court," as used in Code § 38.2-209(A), means "judge." Accordingly, the judge, not the jury, must determine whether the insurer breached the insurance contract in bad faith before it may award attorney's fees and costs to the insured pursuant to Code § 38.2-209(A).

Our conclusion is consistent with the commonly accepted definition of "court," which is "[a] tribunal constituted to administer justice [or t]he judge or judges who sit on such a tribunal." Black's Law Dictionary 430 (10th ed. 2014); see Alexandria Gazette Corp. v. West, 198 Va. 154, 162, 93 S.E.2d 274, 281 (1956) ("[T]he word 'court' refers sometimes to the judicial institution, at other times to the judicial officer, and still at other times to the place where a court is being held.").

The case relied upon by REVI, Beasley v. Bosschermuller, 206 Va. 360, 143 S.E.2d 881 (1965), is not to the contrary. In that case, we considered a different statutory provision requiring "courts" to take judicial notice of the statutory tables of speed and stopping distances of vehicles. Id. at 366, 143 S.E.2d at 886 (quoting provisions currently codified at Code § 46.2-880). Given the context of the statute, we reasoned that the General Assembly intended "to include juries within the meaning of the word 'courts'" and concluded that courts could instruct juries "as to the contents of the statute which are pertinent to the issues in a particular case." Id. Nothing in Code § 38.2-209 or the Recodification Act suggests that the General Assembly intended to include juries within the meaning of "court" in this context.

7

We also observe that the General Assembly plainly stated its intent behind the Recodification Act. When the legislature directed the Commission to study former Title 38.1, it recited that the provisions of former Title 38.1 had become rife with "inconsistencies both in style and substance." H. J. Res. 1, Va. Gen. Assem. (Reg. Sess. 1984). The General Assembly further recited that the provisions of former Title 38.1 needed to be reorganized and revised for "grammar, clarity and purpose," and that substantive changes were required to account for developments in the industry. Id.

The Commission addressed these concerns in its report, identifying the principal changes in the introduction and additional substantive changes at the beginning of each chapter, and providing drafting notes throughout. As explained, the substitution of "court" for "trial judge" made the provision codified as Code § 38.2-209 consistent with a related provision within the title.[3] Moreover, the Commission did not indicate that it intended to make a substantive change by substituting the term "court" for "trial judge" in Code § 38.2-209. See The Revision of Title 38.1 of the Code of Virginia (Jan. 1986), H. Doc. No. 17, at 12-13.

The Recodification Act "was the legislative implementation" of the Commission's report on the revision of former Title 38.1. Eberhardt, 283 Va. at 196, 721 S.E.2d at 527. The General Assembly enacted the Commission's recommendations with few amendments, and no amendments to the recommended language now codified as Code § 38.2-209. Therefore, we accept the report as "persuasive authority" that the General Assembly did not intend to make a substantive change in Code § 38.2-209. Newberry Station Homeowners Ass'n v. Board of Supervisors, 285 Va. 604, 617, 740 S.E.2d 548, 555 (2013).

---

[3] See Code § 38.2-807 (former Code § 38.1-70, enacted by 1952 Acts ch. 317 (distinguishing between "court" and "jury")); see also Code § 38.2-617(C) (former Code § 38.1-57.24(C), enacted by 1981 Acts ch. 389 (authorizing the "court" to "award the cost of the action and reasonable attorney's fees to the prevailing party")).

8

C. The Right to a Jury Trial Does Not Apply to Proceedings Under Code § 38.2-209

We find no merit in REVI's argument that Code § 38.2-209 denies it the right to a jury trial under the Constitution of Virginia. Article I, Section 11 of the Constitution of Virginia provides "[t]hat in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred." Yet, the right to a jury trial does not apply "to those proceedings in which there was no right to jury trial when the Constitution was adopted." Stanardsville Volunteer Fire Co. v. Berry, 229 Va. 578, 583, 331 S.E.2d 466, 469 (1985) (citing Bowman v. Virginia State Entomologist, 128 Va. 351, 372, 105 S.E. 141, 148 (1920)).

Code § 38.2-209(A) does not create an independent cause of action for an insurer's bad faith breach of an insurance contract. See Code § 38.2-209(B) ("Nothing in this section shall be deemed to grant a right to bring an action against an insurer by an insured who would otherwise lack standing to bring an action."); see also 1982 Acts ch. 576 (codified as former Code § 38.1-32.1). Thus, it is not a cause of action separate from REVI's claim for breach of contract, nor is it a codified version of the common law claim for bad faith. See CUNA Mut. Ins. Soc'y v. Norman, 237 Va. 33, 38, 375 S.E.2d 724, 726-27 (1989); State Farm Mut. Auto. Ins. Co. v. Floyd, 235 Va. 136, 142, 366 S.E.2d 93, 96 (1988). Rather, the section authorizes the court to award attorney's fees and costs after the insured establishes coverage under the disputed policy, and the court finds that the insurer denied coverage in bad faith. It is a vehicle for shifting attorney's fees and costs where otherwise such costs would not be recoverable.

Virginia follows the "American Rule," which states that "[g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." Mullins v. Richlands Nat'l Bank, 241 Va. 447, 449,

9

403 S.E.2d 334, 335 (1991) (citations omitted). In Virginia, the right to recover attorney's fees and costs has been regulated by statute since the colonial era.[4] See 1778 Acts ch. 14, § 5; 1764 Acts ch. 15, § 3; 1765 Acts ch. 52, § 3; 1761 Acts ch. 3, § 11; see also John Leubsdorf, Toward a History of the American Rule on Attorney Fee Recovery, 47 Law & Contemp. Probs. 9, 10, 12 (1984).

In 1761, the General Assembly enacted "An Act for Regulating the Practice of Attornies," prescribing the fees that an attorney could charge for his services. 1761 Acts ch. 3, § 11. Subsequently, the General Assembly authorized the clerks of court to tax the prescribed attorney's fee upon recovery in the bill of costs. See 1778 Acts ch. 14, § 5; 1765 Acts ch. 52, § 3; 1764 Acts ch. 15, § 3; see also 1745 Acts ch. 1, § 15 (directing the clerk of court to tax an attorney's fee in the bill of costs for certain actions). These acts demonstrate that when Article I, Section 11 was adopted, an attorney's fee award was a ministerial matter, closely regulated by the General Assembly, and not a question for the jury. Moreover, no provision or cause of action analogous to the fee-shifting provision of Code § 38.2-209(A) existed when the Constitution was adopted. Accordingly, Article I, Section 11 does not apply to proceedings under Code § 38.2-209(A). REVI has no right to a jury trial on the issue of bad faith or the corresponding award of attorney's fees and costs.

---

[4] In England, the common law did not expressly allow costs except by statute, the first of which was the Statute of Gloucester. 4 St. George Tucker, Blackstone's Commentaries with Notes of Reference to the Constitution and Laws of the Federal Government of the United States and of the Commonwealth of Virginia 399 (1803). Before the Statute of Gloucester, costs were "considered and included" in the damages, but the amounts were "frequently inadequate" to cover the plaintiff's expenses. Id. Following the enactment of the statute, Blackstone explains that "costs for the plaintiff are always entered on the roll as increase of damages by the court." Id. Even so, until 1797, "if a later statute provided that a fixed amount of damages should be recoverable for a new offence created by it," the plaintiff could not also recover costs unless the statute expressly provided for such costs. 4 W. S. Holdsworth, A History of English Law 537 (1924).

10

For these reasons, we conclude that the word "court," as used in Code § 38.2-209(A), means "judge." A judge, not a jury, must determine whether an insurer "has either denied coverage or failed or refused to make payment to the insured under the policy" in bad faith. We also conclude that Code § 38.2-209(A) does not implicate the right to a jury trial under Article I, Section 11 of the Constitution of Virginia. Therefore, we affirm the judgment of the circuit court.

Affirmed.

JUSTICE McCLANAHAN, concurring.

I agree with the dissent that the legislative history of Code § 38.2-209(A) is not determinative and that, when in doubt, a trial by jury should be preferred. In a vacuum, the term "court" can be understood to include both judge and jury. But in the context of a statute providing for a finding or determination to be made by "the court," the General Assembly has consistently used the term "court" to refer to the trial judge.[1] In light of the General Assembly's consistent use of the term "court" to mean trial judge, not jury, when referring to a finding or

---

[1] See, e.g., Code § 4.1-323 ("the jury or the court may find the defendant guilty of an attempt, or being an accessory"); Code § 5.1-13 ("in the discretion of the court or jury trying the case"); Code § 8.01-52 ("[t]he jury or the court, as the case may be" may award damages); Code § 8.01-53 (class and beneficiaries shall be fixed at the time of verdict "if the jury makes the specification" or at the time judgment is rendered if the "court specifies the distribution"); Code § 8.01-54 (if jury unable to agree then the court shall specify distribution); Code § 8.01-188 (such issues may be submitted to a jury with proper instructions by the court); Code § 8.01-430 (providing for the court to set aside jury verdict and decide case on the merits that is contrary to the evidence or without evidence to support it); Code § 8.01-643 ("Unless the defendant shall ask for a trial by jury, the court shall hear the same."); Code § 36-96.18(C) (if the court or jury finds a discriminatory housing practice has occurred, the court or jury may award damages to plaintiff and the court may award reasonable attorney's fees); Code § 38.2-807(A) (attorney's fees shall not exceed 33 1/3 percent of amount that the court or jury finds plaintiff is entitled to recover).

11

determination by "the court," and the absence of language in the statute to the contrary, I agree with the majority that Code § 38.2-209(A) provides for the determination of attorney's fees to be made by the trial judge.

For these reasons, I concur in the result reached by the majority.


JUSTICE KELSEY, dissenting.

The majority holds that a trial judge, not a jury, must determine whether an insurer committed a bad-faith breach of contract justifying an award of attorney's fees under Code § 38.2-209(A). I recognize the well-worn path taken by the majority, but I cannot follow. The specific legal question presented by this case, while seemingly narrow, touches on far broader issues — and the answer given by the majority adds weight to a modern jurisprudential trend that I lament.[1]

I.

REVI, LLC filed a first-party breach of contract claim against Chicago Title Insurance Company (the insurer). REVI claimed that the insurer had breached, in bad faith, its contractual obligation to pay REVI's claim on the insurer's policy of title insurance. At a bifurcated trial, a jury agreed with REVI, awarding REVI $1,241,000 in benefit-of-the bargain damages and $442,000 in attorney's fees.

---

[1] See generally John H. Langbein, The Disappearance of Civil Trial in the United States, 122 Yale L.J. 522, 524 (2012) (citing statistics showing that, in 2002, 1.2% of federal civil filings terminated in jury trials and 0.6% of state court dispositions ended in jury trials). We have experienced a similar trend in Virginia. In 1999, 1.9% of all civil cases filed in Virginia circuit courts were concluded by a jury trial. See Office of the Executive Secretary, Supreme Court of Virginia, State of the Judiciary Report, at A-37 & tbl. 17 (2008). By 2012, that percentage dropped to 0.6%. See Office of the Executive Secretary, State of the Judiciary Report, Supreme Court of Virginia, at A-16 & tbl. 11 (2012).

After receiving both verdicts, the trial judge sua sponte vacated the jury's award of attorney's fees, holding that Code § 38.2-209(A) provides that the issue of bad faith in breach of contract actions can only be decided by a judge, not a jury, because the statute provides that "the court," and not the "jury," may make the award. The trial judge then reconsidered the evidence de novo and held that the insurer had not committed a bad-faith breach warranting an award of attorney's fees.

REVI filed a petition for appeal challenging (i) the trial judge's holding that only a judge, not a jury, could decide the bad-faith issue and (ii) the trial judge's de novo factual finding that the insurer did not commit a bad-faith breach of the insurance contract. We awarded REVI an appeal on its first, but not its second, assignment of error.

II.

On appeal, REVI argues that the reference to "the court" in Code § 38.2-209(A) is ambiguous and should be interpreted to include a jury. I agree.

A.

Code § 38.2-209(A) authorizes "the court" to determine whether an insurer commits a bad-faith breach of contract and to award attorney's fees.

The traditional meaning of the term "court," as Sir Edward Coke defined it, is simply "a place where justice is judicially administered." 1 Edward Coke, The First Part of the Institutes of the Laws of England, or, a Commentary upon Littleton § 73, at 58 (10th ed. 1703).[2] Unadorned

---

[2] See, e.g., 1 Benjamin V. Abbott, Dictionary of Terms and Phrases Used in American or English Jurisprudence 301 (1879) ("a tribunal of justice; an authority organized to hear and determine controversies in the exercise of judicial power"); James A. Ballentine, A Law Dictionary 95 (1916) ("[p]ersons officially assembled under authority of law, for the administration of justice"); Henry C. Black, A Law Dictionary 284 (2d ed. 1910) ("[t]he place where justice is judicially administered"); 1 John Bouvier, A Law Dictionary 325 (6th rev. ed. 1856) ("a place where justice is judicially administered" (citing Coke, supra, at 58)); Richard

13

by context, the ordinary meaning of the term does not specify whether a judge or jury will decide the case. For example, when two drivers walk away from a car wreck, and one says to the other, "I'm going to take you to court" or "You'll see me in court," most people would not think, "Well, thank heavens a judge and not a jury will be deciding the case." The ordinary use of the term, therefore, is imbued with ambiguity.[3] The contention otherwise is as unconvincing as it is unconventional.

While it is true that the term "[c]ourt is frequently used as a metonymic substitute for judge," Bryan A. Garner, A Dictionary of Modern Legal Usage 231 (3d ed. 2011) (emphasis omitted), that meaning, some say, can be attributed to "the sometimes-strange jargon of jurists," id. (quoting John A. Jenkins, The Litigators 165 (1989)). The more traditional view, widely recognized by our Founders, declares that "[j]uries form, with a few exceptions, another constituent part of courts." 2 The Works of the Honourable James Wilson 305 (Bird Wilson ed., 1804)[4]; see, e.g., Black's Law Dictionary 318 (5th ed. 1979) (defining "court" as "[a] body organized to administer justice, and including both judge and jury"). This view continues to

---

Burn, A New Law Dictionary 203 (1792) (same); 1 Arthur English, A Dictionary of Words and Phases Used in Ancient and Modern Law 226 (Beard Books 2000) (1898) ("[a] place where justice is administered in accordance with legal forms and principles"); Stephen H. Gifis, Barron's Law Dictionary (6th ed. 2010) ("[t]he branch of government which is responsible for the resolution of disputes under the law of the government"); 2 Words and Phrases 650-51 (3d ed. 1928) (collecting cases interpreting "court" to "ordinarily designate[] the tribunal itself, including its constituent parts of judge and jury").

[3] 1 Abbott, supra note 2, at 302 ("The term court may be construed to mean the judges of the court, or to include the judges and jury, according to the connection and the object of its use." (citation omitted)); English, supra note 2, at 226 ("Court" denotes "[t]he judge, judges, or the judge and jury when the court is in session."); 2 Words and Phrases, supra note 2, at 650 ("[T]he statute provides that the 'court' shall allow a reasonable attorney's fee . . . . The word, 'court' however, was doubtless used by the Legislature in the broader sense as including both judge and jury or judge alone, according as the 'court' may be constituted when the trial occurs.").

[4] Justice James Wilson was a signer of the Declaration of Independence, a principal drafter of Article III of the United States Constitution, and an inaugural member of the United States Supreme Court. See generally William Ewald, James Wilson and the Drafting of the Constitution, 10 U. Pa. J. Const. L. 901, 901, 915, 1004-05 (2008).

resonate as authoritative in modern times. See, e.g., Lorillard v. Pons, 434 U.S. 575, 579 n.5, 582-83 (1978) (holding that a federal statute authorizing "the court" to grant legal or equitable relief could fairly be read to afford a right to jury trial on claims for lost wages).[5]

Fifty years ago, we applied the traditional view in Beasley v. Bosschermuller, 206 Va. 360, 143 S.E.2d 881 (1965). Specifically, we held that a statute authorizing "courts" to take judicial notice of the statutory tables of speed and stopping distances of vehicles must be understood "to include juries within the meaning of the word 'courts.'" 206 Va. at 366, 143 S.E.2d at 886. We came to this conclusion because "in cases triable by a jury the word 'court' employed in a statute includes the jury as a constituent part." Id.

The majority holds that the traditional view must give way when the statutory context suggests otherwise. I could not agree more. There are countless examples of this. See, e.g., Ingram v. Commonwealth, 62 Va. App. 14, 24, 741 S.E.2d 62, 67 (2013) (holding that "court," used in the context of a statute governing involuntary treatment orders under Code § 37.2-1101(A), means a court sitting without a jury). But nothing in the Code of Virginia or, more specifically, Title 38.2, provides the contextual support for the interpretation the majority imputes to Code § 38.2-209(A).

In dozens of statutes throughout the Code, the General Assembly speaks of the "court" sitting "without a jury."[6] In each of these, "without a jury" would be superfluous if, as the

---

[5] See also Feltner v. Columbia Pictures TV, Inc., 523 U.S. 340, 356 (1998) (Scalia, J., concurring) ("In common legal parlance, the word 'court' can mean 'the judge or judges, as distinguished from the counsel or jury.' But it also has a broader meaning, which includes both judge and jury." (citations omitted)); Sibley v. Fulton DeKalb Collection Serv., 677 F.2d 830, 832, 834 (11th Cir. 1982) (holding that the term "court" in the statutory phrase, "in such amount as the court may allow," refers to trial by both judge and jury and not only to trial by judge alone).

[6] See, e.g., Code §§ 2.2-3006(B), 3.2-5216, 3.2-5414(A), 8.01-52, 8.01-519, 8.01-581.20(B), 9.1-405, 10.1-1437(A), 11-8, 15.2-717, 15.2-1507(A)(9)(b), 15.2-1607, 15.2-1654,

majority contends, the term "court" necessarily means a judge deciding the issue entirely on his own. It is true that other statutes use the term "court" to imply court qua judge. But many of these statutes specifically mention "jury" as distinct from "court," so as to make clear that, in those particular contexts, "court" refers only to the constituent part of judges.[7] In other instances, even within Title 38.2, the General Assembly explicitly refers to the "judge" as distinct from the "court," thus employing a broader meaning of "court."[8] To the extent that any

15.2-1812.2(B), 15.2-2135(A), 15.2-2411, 15.2-3000, 15.2-3104, 18.2-10(e), 18.2-10(f), 18.2-15, 18.2-22(a)(3), 18.2-54, 18.2-56.1(B), 18.2-56.1(D), 18.2-61(C), 18.2-67.1(C), 18.2-67.2(C), 18.2-91, 18.2-95, 18.2-153, 18.2-155, 18.2-248.5(A), 18.2-384, 19.2-244, 19.2-283, 19.2-298.01(C), 21-126, 22.1-314, 32.1-314(A), 33.2-1103, 45.1-161.322(B), 46.2-357(B)(2), 46.2-391(D)(2)(a), 51.1-124.13(B), 55-326, 56-522, 58.1-1825(D), 58.1-3709(B), 58.1-3984(A), 59.1-41.6, 63.2-507(B); see also Code §§ 8.01-680 ("court without the intervention of a jury"); 16.1-272 ("court shall fix the sentence without the intervention of a jury"); 19.2-257 ("court shall hear and determine the case without the intervention of a jury"); 19.2-258 (same); 19.2-258.1 (same); 19.2-400 ("in cases to be tried without a jury, before the court begins to hear or receive evidence").

[7] See, e.g., Code §§ 2.2-1839, 4.1-323, 5.1-13, 6.2-201, 8.01-53(B), 8.01-54(B), 8.01-55, 8.01-106, 8.01-107, 8.01-120, 8.01-158, 8.01-159, 8.01-166, 8.01-188, 8.01-194, 8.01-229(A)(2)(b), 8.01-267.6, 8.01-336, 8.01-360, 8.01-361, 8.01-362, 8.01-374, 8.01-374.1, 8.01-377, 8.01-379.3, 8.01-380(A), 8.01-381, 8.01-382, 8.01-383, 8.01-383.1, 8.01-403, 8.01-417.1, 8.01-423, 8.01-430, 8.01-565, 8.01-573, 8.01-576.1, 8.01-576.2, 8.01-576.3, 8.01-581.7(A), 8.01-643, 11-4, 16.1-113, 18.2-61(B), 18.2-67.5:1, 18.2-248(C), 18.2-268.10(D), 18.2-386.1(E), 18.2-457, 19.2-219, 19.2-231, 19.2-262(A), 19.2-264, 19.2-264.1, 19.2-264.2, 19.2-264.3(A), 19.2-264.3:1(F)(2), 19.2-264.4, 19.2-266.1, 19.2-268, 19.2-271.2, 19.2-291, 19.2-295, 19.2-295.1, 19.2-295.3, 19.2-307, 19.2-339, 19.2-386.10, 25.1-219, 25.1-318, 29.1-738.2(E), 29.1-810(B), 36-96.16(C), 36-96.17(E), 36-96.18(C), 37.2-908, 38.2-807, 46.2-341.26:4, 46.2-341.26:10(D), 46.2-942, 46.2-943, 53.1-55, 53.1-156, 55-153, 55-177, 55-178, 55-238, 59.1-130, 61.1-61, 64.2-446(B), 64.2-448(E), 64.2-1212(B), 64.2-2007, 65.2-819, 65.2-1006(D).

[8] See, e.g., Code §§ 38.2-1506(C) ("Action on the petition may be taken by the court or a judge of the court." (emphasis added)); 38.2-2405 ("Any fidelity and surety insurer shall be accepted as surety upon any bond required by . . . any court, judge, public officer, board, or organization upon presentation of evidence satisfactory to the court, judge, or other officer."); 38.2-2409 ("Assets shall be . . . held in a manner that prevents the withdrawal . . . without an order of a court or a judge, made on any notice to the surety which the court or judge directs." (emphasis added)); 38.2-2410 ("Any court, judge or other officer . . . shall . . . allow a sum for the expense."); see also Code §§ 18.2-67.7(C) (referring to "court" broadly and explicitly recognizing the constituent parts of "judge" and "jury"); 18.2-67.9(B) (same); 19.2-154 (same);

16

inference can be drawn from these statutes, it is that when "court" designates only a judge, the legislature typically reinforces that meaning by specifically distinguishing the "court" from the "jury."

Suffice it to say, the host of discordant uses of these statutory terms — particularly the inconsistent usage of the term "court" within Title 38.2 — is alone enough to dissuade me from accepting the majority's conclusory assertion that the term "court" has a "commonly accepted definition" that necessarily excludes juries. See Ante at 7. The majority implicitly concedes the point by relying heavily on the legislative history of Code § 38.2-209 in an unorthodox effort to vouch for this "commonly accepted definition." Ante at 7-8.[9]

I do not see how the legislative history provides the majority with the confidence it seeks. If anything, I would think it would do just the opposite. The General Assembly amended and recodified the insurance laws (formerly Title 38.1) as Title 38.2 in 1986. See 1986 Acts ch. 562. Prior to that recodification, the predecessor statute to Code § 38.2-209 specifically provided that "the trial judge after verdict" should decide the bad-faith issue and that fees could be awarded "if it is determined by such trial judge in such case" that the insurer has not acted in good faith. 1982 Acts ch. 576 (as enacted, former Code § 38.1-32.1 (Cum. Supp. 1982), quoted in CUNA

---

19.2-303 (acknowledging implicitly that a jury is a constituent part of "court" by permitting the court, "whether with or without jury," to suspend the imposition of a sentence).

[9] If the term "court" truly had a "commonly accepted definition" that rendered the statute unambiguous, ante at 7, neither the majority nor I should be consulting legislative history at all. We would instead just consult our favored dictionary and be done with it. See, e.g., Clark v. Strother, 238 Va. 533, 541, 385 S.E.2d 578, 582 (1989) (relying solely on a dictionary for a word's "commonly accepted" meaning); Roanoke City Sch. Bd. v. Times-World Co., 226 Va. 185, 192, 307 S.E.2d 256, 259 (1983) (relying only on two dictionaries); Suggs v. Life Ins. Co. of Va., 207 Va. 7, 11, 147 S.E.2d 707, 710 (1966) (finding no "ambiguity" in a term that has a "commonly accepted definition"). As we have often said, "When the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." Virginia Broad. Corp. v. Commonwealth, 286 Va. 239, 249, 749 S.E.2d 313, 318 (2013) (alteration omitted) (quoting Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985)).

17

Mut. Ins. Soc'y v. Norman, 237 Va. 33, 38, 375 S.E.2d 724, 726 (1989)).  The 1986 amendment deleted the phrases "the trial judge after verdict" and "if it is determined by such trial judge in such case," replacing "trial judge" with "the court."  Compare former Code § 38.1-32.1 with Code § 38.2-209(A).

In Virginia, "a presumption exists that a substantive change in law was intended by an amendment to an existing statute," Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002) (quoting Virginia-American Water Co. v. Prince William Cty. Serv. Auth., 246 Va. 509, 517, 436 S.E.2d 618, 622-23 (1993)), and thus, we should "assume that the General Assembly's amendments to the law are purposeful and not unnecessary or vain," Virginia-American Water Co., 246 Va. at 517, 436 S.E.2d at 623.

That presumption surely applies here.  If "the court" means exactly the same thing as the phrase "the trial judge after verdict," then the 1986 amendment accomplished nothing except to make unclear what had previously been perfectly clear.  See Appellant's Br. at 16–17.  If we are to draw any inferences at all from the amendment, it should be toward giving the new language some meaning — as opposed to none at all.  That is particularly true given our prior observation that "in cases triable by a jury the word 'court' employed in a statute includes the jury as a constituent part."  Beasley, 206 Va. at 366, 143 S.E.2d at 886.

The majority makes much over the fact that the Code Commission's Report to the General Assembly does not specifically call attention to the amendment as "substantive."  Ante at 8.  But that is a peculiarly thin basis on which to rebut the judicial presumption to the contrary.[10]  The Report plainly states that the recodification was a "complete rewrite" of the

_____

[10] This presumption can be rebutted when a recodification makes no substantive change in law.  See, e.g., Newberry Station Homeowners Ass'n v. Board of Supervisors, 285 Va. 604, 617-18, 740 S.E.2d 548, 555-56 (2013) (finding no change in law when drafting note expressly

18

insurance laws and made "substantive changes" to it.[11]   Although the Report summarizes certain

"principal changes," id., it is highly speculative to assume that not expressly mentioning the

amendment of former Code § 38.1-32.1 to Code § 38.2-209 as a "principal" change somehow

proves that the staffers who wrote the Report thought that the amendment was a non-substantive,

purely stylistic edit.[12]   And, frankly, I am not sure that it should matter if they did.  The judicial

function of interpreting statutes must operate at a higher level than this.  It is the legislative intent

of the General Assembly, not the Code Commission, that we must discern.  See Lavery v.

Automation Mgmt. Consultants, Inc., 234 Va. 145, 149 n.3, 360 S.E.2d 336, 339 n.3 (1987)

("Revisers'" notes accompanying a statute are "not law and they cannot control the exercise of

this Court's obligation to say what the law is.").

B.

As useful as they may be, canons of construction are not infallible.  "Canons of

construction need not be conclusive and are often countered, of course, by some maxim pointing

---

stated that the recodification did not intend to effect any substantive change and when General
Assembly adopted all of the Code Commission's recommended language without amendment);
Waldrop v. Commonwealth, 255 Va. 210, 214, 495 S.E.2d 822, 825 (1998) (finding no change in
law where "nothing in the Recodified Act suggests an intent to make substantive changes in the
Act" and where the Report of the Code Commission stated "the goal of [the] recodification is a
clearer, more easily understood set of election laws and the elimination of ambiguities in the
present law rather than substantive changes in the law." (emphasis added) (quoting Report of the
Virginia Code Commission on the Recodification of Title 24.1 of the Code of Virginia, S. Doc.
No. 25 (1993)).  Furthermore, "courts do not give much, if any, weight to section headings,
comments, or notes where they were inserted by the compiler or publisher for convenience of
reference."  2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction
§ 47:14, at 346 (7th rev. ed. 2014).

[11] Virginia Code Commission, Report of the Virginia Code Commission on the Revision
of Title 38.1 of the Code of Virginia, H. Doc. No. 17, at 1 (1986).

[12] See State Farm Mut. Auto. Ins. Co. v. Major, 239 Va. 375, 377-79, 389 S.E.2d 307,
309 (1990) (finding a "plainly indicate[d]" legislative intent "to alter the substantive  meaning of
the recodified provision" of the insurance law from "the change in language in the recodified
provision," notwithstanding the absence of a "revisors' note" designating the revision as
substantive).

19

in a different direction." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001). When this occurs, as is arguably the case here, courts should acknowledge the analytical stalemate and search for a tie-breaker principle. Virginia judges need not go very far to find one that directly addresses this case.

Authored by George Mason, the 1776 Virginia Declaration of Rights declared that "the ancient trial by jury is preferable to any other" and thus "ought to be held sacred." Virginia's Declaration of Rights, § 11, 9 Hening's Statutes of Virginia 109, 111-12 (1776). This sacred, constitutional preference survives to this day as Article I, Section 11, of the Constitution of Virginia and constitutes a meta-canon recognizing the Commonwealth's venerated tradition of viewing the citizen jury as a constituent and essential part of the judiciary — "preferable" to any other. Id.

Our faith in this premise comes from the English common law, so deeply embedded in the Commonwealth's history,[13] which declared juries to be "the best investigators of truth, and the surest guardians of public justice." 3 William Blackstone, Commentaries *380; see also The Works of the Honourable James Wilson, supra, at 315-17. "So tight was the linkage between trial and jury that there was in fact no such thing as nonjury trial at common law. In any case involving a disputed issue of fact, bench trial (adjudication by the judge sitting without a jury)

---

[13] "The common law of England was the common law of Colonial Virginia, and after the Revolution became the common law of the Commonwealth." Miller v. Commonwealth, 159 Va. 924, 931, 166 S.E. 557, 559 (1932); see also United States Fid. & Guar. Co. v. Carter, 161 Va. 381, 387-89, 170 S.E. 764, 765-66 (1933) (reaffirming that Virginia adopted English common law "as understood at the time of the American Revolution"); Briggs v. Commonwealth, 82 Va. 554, 557 (1886) (recognizing the export of English common law to Colonial Virginia and the Commonwealth's official adoption of it following the Revolution); Taylor v. Commonwealth, 58 Va. App. 435, 443-46, 710 S.E.2d 518, 522-24 (2011) (acknowledging the adoption and reach of English common law in the Commonwealth); W. Hamilton Bryson, English Common Law in Virginia, 6 J. Legal Hist. 249, 251 (1985) (noting that "the common law was brought from England to Virginia in 1607").

20

was unknown until the later nineteenth century."  John H. Langbein, The Disappearance of Civil Trial in the United States, 122 Yale L.J. 522, 524 (2012).

The citizen jury was understood as "the 'lower judicial bench' in a bicameral judiciary"[14] and "the democratic branch of the judiciary power."[15]  Within this tradition, the jury does not function as a "mere procedural formality, but a fundamental reservation of power in our constitutional structure.  Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary."  Blakely v. Washington, 542 U.S. 296, 305-06 (2004).  Ordinary citizens, John Adams wrote, "should have as complete a control . . . in every judgment of a court of judicature" as in the legislature.  Id. at 306 (quoting in parenthetical John Adams, Diary Entry (Feb. 12, 1771), reprinted in 2 Works of John Adams 252, 253 (C. Adams ed. 1850)).[16]

As the "democratical balance in the Judiciary power,"[17] the jury system secured to the citizenry "a share of Judicature which they have reserved for themselves."[18]  From this perspective, "the common man in the jury box, no less than the citizen in the voting booth, was

---

[14] Akhil Reed Amar & Les Adams, The Bill of Rights Primer 138 (2002) (quoting John Taylor, An Inquiry into the Principles and Policy of the Government of the United States 209 (W. Stark ed., 1950) (1814)).

[15] Id. (quoting Essays by a Farmer (IV), reprinted in 5 The Complete Anti-Federalist 36, 38 (Herbert J. Storing ed., 1981)).  See generally Akhil Reed Amar, The Bill of Rights: Creation and Reconstruction 11, 81-118 (1998).

[16] With characteristic hyperbole, Jefferson was even more emphatic:  "Were I called upon to decide whether the people had best be omitted in the Legislative or Judiciary department, I would say it is better to leave them out of the Legislative."  Blakely, 542 U.S. at 306 (quoting in parenthetical Letter from Thomas Jefferson to the Abbé Arnoux (July 19, 1789), reprinted in 15 Papers of Thomas Jefferson 282, 283 (J. Boyd ed. 1958)).

[17] Amar, The Bill of Rights: Creation and Reconstruction 95 (quoting Essays by Hampden, reprinted in 4 The Complete Anti-Federalist, supra note 15, at 198, 200).

[18] Id. at 94 (quoting Wythe Hold, "The Federal Courts Have Enemies in All Who Fear Their Influence on State Objects": The Failure to Abolish Supreme Court Circuit-Riding in the Judiciary Acts of 1792 and 1793, 36 Buff. L. Rev. 301, 325 (1987)).

central to a democratic theory that asserted the sovereignty of the people through self-government."  Ronald J. Bacigal, Putting the People Back into the Fourth Amendment, 62 Geo. Wash. L. Rev. 359, 409 (1994).[19]  Because of its unique role within our democracy, the jury remains to this day a "cornerstone of Anglo-American judicial procedure."  Glossip v. Gross, ___ U.S. ___, ___, 135 S. Ct. 2726, 2748 (2015) (Scalia, J., concurring).

Could we ask for a more worthy canon of construction than the constitutional bias in favor of the "ancient trial by jury" and the declared will of the People that it "is preferable to any other" manner of trial?  Virginia's Declaration of Rights, § 11, 9 Hening's Statutes of Virginia 109, 111-12 (1776); see also Va. Const., art. I, § 11.  Is there any better meta-canon to rule over the lesser canons of constructions that rely almost entirely on linguistics, syntax, and assumptions about ideal draftsmanship?

### III.

In short, I believe that the term "court" in Code § 38.2-209(A) is ambiguous because reasonable interpreters could read it to include a jury or, conversely, to exclude a jury.  Picking solely from these opposing views seems to me to miss the forest for the trees.  The legal timberland of the Commonwealth was planted by arborists who considered the citizen jury as sacred.  If any reasonable statutory construction exists to preserve this "preferable" method of deciding disputes, Va. Const. art. 1, § 11, it should prevail over all the others.  Only by following this interpretative path can we preserve "in the hands of the people that share which they ought to have in the administration of public justice."  Blackstone, supra, at *380.

For these reasons, I respectfully dissent.

---

[19] See also 1 Alexis De Tocqueville, Democracy in America 362 (Henry Reeve trans., 3d ed. 1863) ("The system of the jury, as it is understood in America, appears to be as direct and as extreme a consequence of the sovereignty of the people as universal suffrage."); see generally id. at 358-67 (discussing trial by jury as a democratic "political institution" in the United States).